JOHN W. HOWELL, Administrator, Respondent, v. ST. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 4, 1913.

1. **ACTIONS: Ex Delicto and Ex Contractu: Distinction.** While the forms of civil actions have been abolished in this State, the distinction between actions for tort and for breach of contract is observed.

2. **DAMAGES: Breach of Contract.** The party committing a breach of a contract is liable for such damages only as arise from such breach itself, according to the usual course of things, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it.

3. **COMMON CARRIERS: Breach of Contract of Carriage: Damages: Facts Stated.** A shipper was promised by defendant railroad company a certain kind of a car in which to load and ship mules to market, and, upon being advised by defendant's station agent that the car would be at the station at the appointed time, drove the mules there, but found, on arrival, that the character of car stipulated for was not there and that the car tendered was unsafe. He refused to ship in this car, and, refusing also to wait for another car which would be brought in on another train, drove the mules back to the farm where he had been keeping them, several miles distant, and from there drove them to another station on another railroad, from which point they were shipped, arriving, however, too late for the market for which he intended them and in a gaunt and stiff condition. In an action for damages for breach of the contract to furnish the kind of car stipulated for, all of the elements of damages counted on were eliminated from the case by instructions, except the claim arising from the driving of the mules from defendant's station to the farm and from there to the other station. *Held*, under these facts, that the expense of driving the mules from defendant's station to the farm and the depreciation in value caused by that drive were the only damages plaintiff was entitled to recover; *held, further*, that plaintiff was not entitled to recover for shrinkage in value of the mules by reason of driving them from the farm to the station on the other railroad, since this matter and its effect were things not within the reasonable contemplation of the parties to the contract.

4. **APPELLATE PRACTICE: Matters Reviewable.** Where an element of damages counted on is withdrawn from the consideration of the jury by an instruction given at defendant's request, and plaintiff does not appeal, such matter is not before the appellate court for consideration, on defendant's appeal.

·5. **COMMON CARRIERS: Breach of Contract of Carriage: Damages.** Three things might reasonably be anticipated as the result of the breach of a contract by a carrier to furnish a shipper with a certain kind of a car, namely: delay in reaching the market; expense incident to the delay; and loss of the market for which the shipment was intended.

6. **APPELLATE PRACTICE: Erroneous Theory of Damages: Disposition of Case on Appeal.** In an action against a carrier for breach of a contract of carriage, where the trial court erroneously permitted a recovery for certain elements of damages, the appellate court *ordered* that the judgment be reversed and the cause remanded with directions to the trial court to ascertain the amount of damages, if any, that plaintiff was entitled to recover on the elements of damages for which a recovery could be had, and to enter judgment therefor.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*R. F. Roy* and *J. D. Hostetter* for appellant.

Defendant, if liable at all, could only be held liable for the natural proximate and probable consequence of its failure to furnish plaintiff a suitable car for the shipment of said mules; and it could not be held liable for any damages resulting from the alleged breach of its contract which could not have been reasonably foreseen or expected. Commission Co. v. Railroad, 113 Mo. App. 544; Hyatt v. Railroad, 19 Mo. App. 300; Pruitt v. Railroad, 62 Mo. 527; Mendock v. Railroad, 133 Mass. 15; Walsh v. Railroad, 42 Wis. 34; Ballentine v. Railroad, 40 Mo. 491; Hobbs v. Railroad, 10 Law Rep. (Q. B.) 111.

*J. O. Allison* and *E. L. Alford* for respondent.

The defendant failed to furnish the car as it had contracted with plaintiff to do. Plaintiff's damages were the natural result thereof and the result to be expected, and the plaintiff is entitled to recover. Baker v. Railroad, 91 Mo. 152; Pruitt v. Railroad, 62 Mo. 527; Harrison v. Railroad, 74 Mo. 364.

STATEMENT.—Plaintiff below, a mule buyer, assembled twenty large, fat mules at the farm of a Mr. Elzea about seven miles from Frankford, a station on defendant's railroad. On the night of Thursday, the 19th of October, 1905, Elzea called up the station agent at Frankford and told him that he wanted a stock car, thirty-six feet long, with drop door. The agent said " 'All right,' he would have it by Saturday morning;" that it would be there in time, ready to go on the down train going south toward St. Louis. It is fairly to be inferred from the evidence that the station agent knew that the intention was to attach the car to a regular freight train that passes Frankford about 12:20 in the afternoon and usually carries live stock from Frankford to the National Stock Yards at East St. Louis, Illinois. On the following Saturday, Elzea, plaintiff being with him, called up the agent before they started with the mules to know whether the car was there. The agent answered that it was not but would be there and to come on with the mules. Thereupon they started from the farm with these twenty head of mules for Frankford. It appears that directly after this last conversation, which was over the telephone, the agent learned that there was no thirty-six-foot car at the disposal of defendant and he attempted to notify plaintiff of that, but plaintiff and Elzea had already started with the drove and could not be reached. When Elzea and plaintiff arrived at the station with the mules, they found that instead of

a thirty-six-foot stock car being there ready for them, there was an ordinary stock car thirty-four feet long and with one of the doors, apparently on the side from which it was to be loaded, broken off.  Plaintiff objected to the car because it was too short and because there was no door to it.  The station agent told plaintiff that he could fix boards across that would be perfectly safe but plaintiff declined to accept this, saying it could not be done with safety.  There is some conflict here between the testimony of plaintiff and that for defendant, plaintiff's testimony, which in the light of the verdict we must accept as true, is that the station agent declined to give him any satisfaction as to when he would have another car there and declined to furnish a thirty-six-foot stock car; according to the testimony of the station agent, he told plaintiff that defendant had no thirty-six-foot stock cars, but if he would wait until the following train, which would come along a few hours later that afternoon, there would be a thirty-four-foot stock car on it in good order which would be at the service of plaintiff.  At all events and according to the testimony of plaintiff himself, when he did not find the car that he expected, and that he claimed he had ordered, at the station on Saturday morning, and found that the car which was there would not suit and was not safe to load his mules in, plaintiff became angry, drove his mules back to Elzea's farm, kept them there that night and the next morning drove them to Vandalia, a station on the Chicago & Alton Railroad, and thence shipped them to the National Stock Yards at East St. Louis.

It is in evidence that if the mules had been shipped over the defendant's road on the morning of the 21st of October, Saturday, they would have reached the National Stock Yards sometime Sunday morning in time and condition to be offered on the market there Monday morning, but that going by the route which they did, they arrived at the National Stock Yards on Monday

morning, stiffened and gaunt from their trip and not in, condition to be put on the market that morning, the market closing somewhere about noon of each day. Plaintiff in his petition avers that the value of the mules on the market at East St. Louis on October 24th, the day when they were sold was "about seven dollars per head lower" than the market at such place for such mules on Monday, the 23d, the market on which said mules were intended to be sold. There is no evidence as to any difference in that market for mules on these dates, nor that these mules were sold at a less price than would have been realized for them if they had arrived on time and in ordinarily good condition.

In his petition in the case plaintiff claimed that on the failure of defendant to provide a stock car of the kind ordered, he had driven the mules back from Frankford to the farm, a distance of seven miles, and from the farm to Vandalia, a distance of between eighteen and nineteen miles, and that the shrinkage in value of the mules was by reason of this drive. He also claimed that he had expended a large amount of money for extra feed for the mules and for labor in caring for them, to-wit, fifty dollars, and he claimed damages in the sum of $430. At the trial of the case plaintiff and his witnesses were permitted, over the objection and exception of defendant, to describe the extra travel from Frankford to the farm and from the farm to Vandalia and to give their opinion as to how much, in their judgment, the mules had been damaged per head "by reason of the drive" from Frankford to Vandalia over the road which was taken and after describing the drive these witnesses placed the damages at from fifteen to twenty dollars a head.

The court at the instance of plaintiff gave two instructions. By the first instruction, which we refer to as set out by respondent in his additional abstract, the court told the jury that if they found from the evidence

in the case that on or about the 19th of October, plaintiff made application to defendant through its agent in charge of its station at Frankford, Missouri, to furnish him with a thirty-six-foot car, suitable for the shipment of a carload of large, fat mules from Frankford to the National Stock Yards in Illinois, the car to be placed at the disposal of plaintiff at defendant's station at Frankford not later than Saturday morning, October 21st, so that the mules could be shipped over defendant's railroad to the National Stock Yards, and that plaintiff agreed to deliver the mules at defendant's stock pen at Frankford on that date, and that defendant, through its agent at Frankford, agreed to furnish the car to plaintiff at the time and place and for the purpose for which plaintiff had made the application, if any, and if the jury further found that plaintiff brought a carload of large, fat mules, consisting of twenty head, to defendant's stock pens in Frankford, for shipment on this 21st of October, and that defendant failed to furnish such car and failed to furnish any car suitable for the shipment of the mules or in which the mules could be shipped on that day, but furnished in lieu of such car a car which was unsuitable, unsafe and unfit for the shipment of the mules, if the jury so found, and if the defendant through its agent, after the mules had been placed in defendant's stock pens at Frankford, declined to give plaintiff any assurance that a suitable car would be furnished him at any time for the shipment of the mules, and if the jury found and believed that by reason of the failure of defendant to furnish plaintiff with such suitable car, and by reason of defendant's failure, if any, to give plaintiff any assurance that such car would be furnished him at any time for the shipment of the mules, plaintiff was compelled, in order to care for the mules and properly ship them to the National Stock Yards, to drive them back to the farm and thence to

Vandalia, for shipment to the National Stock Yards, Illinois, and if the jury further found that Vandalia was the most practicable and convenient point to which the mules could be driven for shipment to the National Stock Yards, and if the jury believed and found that in driving the mules from Frankford to the farm mentioned and thence to Vandalia, plaintiff exercised that degree of care for the mules that a careful and prudent person, experienced in the handling of such stock, would have exercised under the same or similar conditions and circumstances, and that by reason of and as the result of the drive from Frankford to Vandalia the mules were made sore, jaded and gaunt and were injured and damaged thereby, the verdict should be for plaintiff, provided the jury further found that the station agent at Frankford was, at the time of the alleged contract, the agent in charge of defendant's freight shipping business at that point, and that as such station agent he transacted all of defendant's business at that point in the shipment of live stock from that point and in obtaining cars for shippers of live stock in carload lots, and that the making of the alleged contract with plaintiff was within the apparent scope of his authority as such station agent.

The second instruction told the jury that if they found for plaintiff, in assessing damages they should take into consideration the injuries and damages to the mules, if any, by reason of being made sore, jaded and gaunt, if so the jury found they were, and which were the direct results of driving them from Frankford to the farm from which they had been brought and thence to Vandalia, and the consequent depreciation, if any, in the market value of the mules, and the jury should assess his damages at such sum as will compensate him for such depreciation, if any, in the market value of the mules at the National Stock Yards, not exceeding the sum of $430.

Howell v. Railroad.

At the close of the testimony for plaintiff, as well as at the close of all the testimony in the case, defendant asked the court to instruct the jury that under the law and the evidence in the case plaintiff was not entitled to recover. These were refused, defendant saving his exception.

Defendant also asked the court to instruct the jury that if they found for plaintiff they should assess his damages at the sum of one cent, which instruction the court refused to give, defendant excepting.

Defendant asked the court to instruct the jury that defendant was not liable for the injuries, if any, caused to the mules by driving them from Elzea's farm to Frankford or by driving them from Frankford to Elzea's farm or for any damages by reason of driving the mules from Elzea's farm to Vandalia, defendant excepting to the refusal of these instructions.

At the instance of defendant, however, the court instructed the jury that defendant could not be held liable in this action for damages resulting to plaintiff's mules while they were in charge of the Chicago & Alton Railroad Company, whether such damages consisted in making the mules gaunt and stiff or sore or otherwise and that in no event was plaintiff entitled to recover anything for extra feed for the mules.

The court further instructed the jury at the instance of defendant that there was no evidence in the case to show any depreciation in the market value of the mules by reason of any fall in the market price of the mules in general between the time when the mules were in defendant's pens at Frankford and the time of their arrival at the National Stock Yards at East St. Louis, nor was plaintiff entitled to any damages resulting to the mules by reason of their being taken from Elzea's farm to Frankford and placed in defendant's stock pens.

The jury returned a verdict for plaintiff, assessing his damages at $240, and also ten dollars for extra expense. Pending action on the motion for new trial, which was interposed by defendant, plaintiff remitted this ten dollars for extra expense. A motion for new trial being interposed and overruled, on this remittitur being made, defendant duly perfected appeal to this court. Pending the appeal, plaintiff died and that being suggested and his administrator appearing was duly substituted as respondent.

REYNOLDS, P. J. (after stating the facts).—It will be seen that this is an action upon a contract for damages for its breach, not one in tort; that it is an action to recover the actual damages sustained for the breach of the contract to furnish a car of certain dimensions at a certain time and place. While the forms of civil actions have been abolished in our State, the distinction between actions for tort and for breach of a contract is observed. Referring to these actions, an accepted authority, quoting from 1 Sutherland on Damages, p. 74 (1 Sutherland, 3 Ed., p. 134), has said: "An important distinction is to be noticed between the extent of responsibility for a tort and that for breach of a contract. The wrongdoer is answerable for all the injurious consequences of his tortious act which, according to the usual course of events and the general experience, were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated. But for breaches of contract the parties are not chargeable with damages on this principle. Whatever foresight, at the time of the breach, the defaulting party may have of the probable consequences, he is not generally held for that reason to any greater responsibility; he is liable only for the direct consequence of the breach, such as usually occur from the breach of such a contract, and as were within the contemplation of the parties, when

the contract was entered into, as likely to result from a breach." [3 Hutchinson on Carriers (3 Ed.), sec. 1358, p. 1609.]

In Melson v. Western Union Telegraph Co., 72 Mo. App. 111, Judge ELLISON, speaking for the Kansas City Court of Appeals, at pages 114 and 115, has quoted at length from Hadley et al. v. Baxendale et al., a decision rendered in 1854 in the Court of Exchequer, the opinion by Baron ALDERSON, reported 9 Exchequer Reports (Welsby, Hurlstone & Gordon) 341, l. c. 353, the rule for the admeasurement of damages, applicable to actions for a breach of contract. It is not necessary to set this rule out in full here, Judge ELLISON having quoted it as above noted, it being sufficient to say that it is to the effect that where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. This has always been recognized in our State as a correct statement of the rule for the admeasurement of damages, in actions for breach of contract. [See Ballentine v. North Missouri Railroad Co., 40 Mo. 491, l. c. 505; Nelson v. Western Union Telegraph Co., supra.]

Let us see how that rule applies to the facts here. Counsel have referred us to no case which falls directly within the facts here, nor have we, on a somewhat careful and laborious search of the authorities, been able to find any case that exactly corresponds in its facts to the one before us.

Irvine v. The Midland Great Western Railway (Ireland) Company, before the Exchequer Division of

the Court of Appeals in Ireland, 6 Irish Law Reports (1880-81) 55, throws some light upon the application of Hadley v. Baxendale to a case somewhat similar to the one before us. There the default of the defendant, the railway company, was the neglect or refusal to provide the large, open wagons, cars as we call them, contracted for and which the jury found were to be capable of containing four tons each, or, as Baron Fitzgerald, who delivered the opinion said, ''if you will, the refusal to carry the hay in such wagons at the price agreed on.'' The defendant had paid a certain sum into court, as covering extra cost of transportation, denying that it was liable for any further damages. The jury, under the direction of the trial judge, had fixed the damages at a sum largely in excess of that amount. On the appeal it was contended by counsel for the defendant that the proper measure of damages was the extra cost of carriage, if any, occasioned by the defendant's beach of the contract in not supplying cars of the kind in contemplation and contracted for. Passing on this contention Baron Fitzgerald said (l. c. 63) that there could be no doubt that the general intention of the law in giving damages in an action of contract is, to place the party complaining, so far as this can be done by money, in the same position as he would have been in if the contract had been performed; that if, in the case before the court, the contract had been duly performed plaintiff might, according to the finding of the jury, have sold his hay at the point of destination at a profit considerably over the amount of the deposit and which larger amount had been allowed by the jury. ''But,'' says Baron Fitzgerald, ''in applying this general intention of placing the complainant in the same position as he would have been in if the contract had been performed, to a case like the present, we must remember that the altered position to be redressed must be one directly resulting from the breach, and not from any

act or omission of the complainant subsequent to the breach, and not directly attributable to it. It is not sufficient that it be an act or omission which would not in fact have taken place but for the breach. If the plaintiff here, after there had been a complete breach of the contract, had burned the hay, then in order to put him in the same position as he would have been in if the contract had been performed, the jury might have given him the whole (value of the hay) as well as the profit ascertained by the judge; but such an application of the general intention of the law would be manifestly absurd." Baron FITZGERALD then argues that the plaintiff might have had his hay conveyed in the ordinary cars of the company, to which, according to his own evidence, there was no objection except the price, and might have had the hay at the point of destination while the price was still at the figure when he first expected to have the hay reach there and so would have suffered no loss whatever except as to the difference of freight, which he could have recovered against the defendant as damages. The conclusion was that the sum deposited by defendant more than covered the extra cost of carriage, which was all for which plaintiff could recover.

In Gulf, Colorado & Santa Fe Ry. Co. v. Martin, 28 S. W. 576 (not found in the official reports), the Court of Civil Appeals of Texas held that the measure of damages for the breach of a contract for furnishing cars for the shipment of cattle which compelled plaintiff to cancel the contract for their sale whereby he lost the opportunity of putting them on the market for that season, was the difference between the reasonable value when under herd at the contemplated time and place of shipment and the amount stipulated in the contract of sale.

In Gulf, Colorado & Santa Fe Ry. Co. v. Hodge & Long, 10 Tex. Civ. App. 543, 30 S. W. 829, an action for damages for breach of contract to furnish cars on

which machinery was to be shipped, the court held
that the shipper could not recover either for profits
lost or for expenses on the part of plaintiff under the
contract.

In Laurent v. Vaughn, 30 Vt. 90, the rule of dam-
ages for failure to furnish transportation contracted
for was said to be the difference between the value of
the goods at the place they were delivered and the
value at the place to which they were contracted to be
delivered, the court applying the rule that the dam-
ages recoverable are such as should have been con-
templated by the parties at the time of making the
contract.

In Grund v. Pendergast, 58 Barb. (N. Y.) 216, cit-
ing Ogden v. Marshall, 4 Seld. 340, it is held that where
a party can secure transportation of his goods by car-
rier other than the one with which he has contracted, it
is not only within his right but it is his duty to do so,
in which case he is entitled to recover the difference,
if any, between the price at which the defendant had
undertaken to carry the goods and the price which
plaintiff was compelled to pay the other carrier for its
transportation. To the same effect see Gilchrist v.
Lumberman's Min. Co., 55 Fed. Rep. 677, 5 C. C. A.
239. It seems also that if between the time of the two
shipments there had been a shrinkage or deterioration
in value of the mules by reason of the delay involved,
the amount of that could be taken into consideration in
determining the damages. [See Ayres v. Chicago &
Northwestern R. Co., 71 Wis. 372, l. c. 383. See, also,
Chicago & Alton R. Co. v. Erickson, 91 Ill. 613.]

It seems from these authorities that plaintiff could
not recover for damages occasioned by the shrinkage
in value of these mules by reason of the drive from
the farm to Vandalia. This, on the ground that this
driving and its effect were things not within the rea-
sonable contemplation of the parties to the contract.

Whether plaintiff could recover for extra feed for the mules is not before us, the court, at the instance of defendant having told the jury he could not, and plaintiff has not appealed. Plaintiff was allowed for the expense of driving from the station to Vandalia but he voluntarily remitted that.

What were the consequences reasonably to be anticipated by defendant for breach of the contract to furnish the car of the kind specified? Three things might reasonably have been anticipated as likely to result from the breach of the contract. First, a delay in reaching the market; second, expense incident to the delay; third, loss of the market for which they were intended. But on none of these were the damages claimed or allowed. It was for the alleged shrinkage in the value of the mules in consequence of this drive of some twenty-six miles that evidence was admitted over the objection and exception of defendant. The verdict of the jury was entirely founded upon the testimony as to depreciation in value caused by shrinkage in consequence of this drive. It is true that the jury added ten dollars for the expense attendant upon this driving, but this was remitted by plaintiff. It was on the theory that plaintiff could recover for this shrinkage from the drive that the trial court instructed the jury.

At the instance of defendant the jury were distinctly instructed that defendant was not liable for any injury to plaintiff's mules while in charge of the Chicago & Alton Railroad Company and that there was no evidence in the case to show any depreciation in the market value of the mules by reason of any fall in the market price of mules in general between the time when the mules were in defendant's pens at Frankford and the time of their arrival at the National Stock Yards at East St. Louis, and the jury were told that they should not allow plaintiff anything for such depreciation. They were specifically instructed also at

the instance of defendant that plaintiff was not entitled to recover any damages resulting to the mules by reason of their having been taken from Elzea's farm to Frankford and placed in defendant's stock pens. Hence all elements of damage were eliminated except those arising from the driving of the mules back from Frankford to the farm and from the farm to Vandalia.

Applying the principles to which we have referred as governing cases of this kind in a suit on a contract, we can arrive at no conclusion other than that the only damage that plaintiff was entitled to in the matter, under the facts in this case, are for any expense incurred in driving the mules from Frankford to Elzea's farm and any depreciation in the value of the mules by that drive. To this plaintiff is entitled and to no other damage or expense.

Other questions are raised by counsel for appellant but in the view we take of the case, it is not necessary to consider them.

It follows that the judgment in the case must be reversed and the cause remanded with directions to the circuit court to ascertain the amount, if any, of such damage and expense and enter judgment accordingly for plaintiff. *Nortoni* and *Allen, JJ.,* concur.