ARTHUR GOURLEY et al., Respondents, v. AMERICAN HARDWOOD LUMBER COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted October 6, 1914.  Opinion Filed November 3, 1914.

1. CONTRACTS: Damages: Breach of Contract. Damages recoverable for the breach of a contract must be the natural result of, and immediately connected with, the breach, and not merely connected with it through a series of intervening causes; and any special loss that would not naturally and obviously arise from the breach, were it not for special circumstances in the contract, is not recoverable, unless such circumstances were known to the defendant at the time the contract was entered into.

2. SALES: Breach of Contract: Special Damages: Evidence. In an action for the breach of a contract for the sale and delivery of lumber on a specified date, evidence of special damage to plaintiff from defendant's failure to furnish the lumber on that date, by reason of the fact that plaintiff desired it to use for a special purpose, was inadmissible, in the absence of proof of notice to defendant of such purpose and that damage would probably accrue from a failure to deliver the lumber within the time specified.

3. ————: ————: ————: Instructions. In an action for the breach of a contract for the sale and delivery of lumber on a specified date, where it was shown that, on the failure of defendant to deliver the lumber by the specified date, plaintiff purchased the same at a certain market, *held* that an instruction given for plaintiff, that, in determining plaintiff's damages, the jury should consider only the market price, if any, of lumber at the place of delivery, and if they found there was no market for such lumber there, then they should find the market value at the nearest market to the point of delivery where the same could be obtained, or the market where 'the same could be obtained upon the most advantageous terms, under all the facts and circumstances in the case, for delivery then free on board cars at the point of delivery, was erroneous, since the market in which plaintiff was entitled to buy was not necessarily the nearest, in point of miles, to the place of delivery, but the best, the most available and advantageous, the nearest, controlling, usual, market for the class of lumber in question—freight rates and the capacity of the market also being taken into consideration.

4. ————: ————: ————: Instructions. In an action for the breach of a contract for the sale and delivery of lumber on a specified date, where it was shown that, on the failure of defendant to deliver the lumber by the specified date, plaintiff purchased the same at a certain market, *held* that an instruction given for plaintiff, that, in determining plaintiff's damages, the jury should consider only the market price, if any, of lumber at the place of delivery, and if they found there was no market for such lumber there, then they should find the market value at the nearest market to the point of delivery where the same could be obtained, or the market where the same could be obtained upon the most advantageous terms, under all the facts and circumstances in the case, for delivery then free on board cars at the point of delivery, was erroneous, for the reason that it was contradictory, in that it charged, in one part, that the jury should find what the market value of the lumber was at the nearest market where the same could be obtained, and, in another part, that the jury should determine the market value where the lumber could be obtained on the most advantageous terms.

5. ————: ————: ————: Instructions. In an action for the breach of a contract for the sale and delivery of lumber on a specified date, where it was shown that, on the failure of defendant to deliver the lumber by the specified date, plaintiff purchased the same at a certain market, *held* that an instruction given for plaintiff, that, in determining plaintiff's damages, the jury should consider only the market price, if any, of lumber at the place of delivery, and if they found there was no market

for such lumber there, then they should find the market value
at the nearest market to the point of delivery where the same.
could be obtained, or the market where the same could be
obtained upon the most advantageous terms, under all the facts
and circumstances in the case, for delivery *then* free on board
cars at the point of delivery, was erroneous, as charging that
the price for immediate delivery should govern and that the
jury should consider the purpose for which plaintiff intended
to use the lumber, when there was no proof of notice to the
seller that special damage would accrue from a failure to deliver
on the date fixed.

6. ————: ————: ————: Market Price. In estimating dam-
ages arising from the breach of a contract of sale, the market
which governs is not necessarily the nearest, in point of miles,
to the place of delivery, but the best, the most available and
advantageous, the nearest, controlling, usual, market for goods
of the class in question—freight rates and the capacity of the
market also being taken into consideration.

7. ————: ————: ————: Elements of Damages. Where a
buyer rejected two cars of lumber as not complying with the
contract of sale, he was entitled to recover freight paid on the
cars so rejected, together with a reasonable charge for unload-
ing them, and for moving and cross-piling the lumber, in order
to protect it, at defendant's request.

8. ————: ————: ————: Interest. In an action for the breach
of a contract of sale, where the recovery is confined to the
difference between the contract price and the price plaintiff was
compelled to pay for the articles on the market—that is, actual
damages sustained, as distinguished from profits lost—it is
proper to allow plaintiff interest on the amount of damages
awarded from the date the suit was begun.

Appeal from St. Louis City Circuit Court.—*Hon. Eu-
gene McQuillin,* Judge.

Reversed and remanded.

*Muench, Walther & Muench* for appellant.

(1) The measure of damages for breach of a con-
tract of sale is the difference between the contract
price and the market price of the commodity at the
time and place where it should be delivered; or, if
there is no market of the commodity at the place of

delivery, the market price at the next available market, with allowance for expense of transportation and hauling, is the measure of its value at the place of delivery. National W. & S. Co. v. Toomey, 144 Mo. App. 516; Howard v. Haas, 139 Mo. App. 591; Cobb v. Whitsett, 51 Mo. App. 146; Van Stone v. Hopkins, 49 Mo. App 386; Northrup v. Coak, 39 Mo. 208; Griffith v. K. C. Co., 46 Mo. App. 539; Huggins v. Lime & Cement Co., 121 Ga. 311; 35 Cyc. p. 636. (2) Special damages are not recoverable, unless the circumstances from which the special damages would arise were known to the seller at the time the contract was entered into. 35 Cyc. p. 634; Mechem on Sales, sec. 1759; Sutherland on Damages (3 Ed.), sec. 52, p. 164; Gill v. Com. Co., 84 Mo. App. 456; Central Trust Co. v. Clarke, 92 Fed. 293. (3) Notice to defendant of the terms of the plaintiffs' contract with the Maxwell-Briscoe Motor Co., given after the contract sued upon was entered into, is not sufficient to entitle plaintiffs to recover special damages. Hooks Smelting Co. v. Planters C. Co., 72 Ark. 275; Hadley v. Baxendale, 9 Exch. 41; Union Foundry Wks. v. Columbia &c. Co., 112 Ill. App. 183. (4) The price upon exceptional sales, or as affected by attempts to purchase lots of the same size as contracted for, is not to be taken as the basis for the estimation of damages. 35 Cyc. 636-7; Faulkner v. Closter, 79 Ia. 15; Thompson & Co. v. Howes, 14 La. Ann. 45. (5) Interest is not allowable in an action to recover unliquidated damages for a breach of contract, the amount of the demand being uncertain. Wiggins v. Railroad, 128 Mo. 224; Dozier v. Jerman, 30 Mo. 216; Typewriter Co. v. Realty Co., 165 Mo. App. 131; Nelson v. Hirsch, 102 Mo. App. 498.

*Fagin & Kane, Glen H. Mohler* and *Arthur N. Sager* for respondents.

(1) The measure of damages to which plaintiffs are entitled, as the natural and logical consequence of defendant's breach of contract, is the difference between the contract price and the market price of similar lumber, on January 1, 1909, for immediate delivery, at the most advantageous or at the nearest available market to New Castle, Indiana, together with the expense of transporting it to the place of delivery, there being no market for such lumber at the said place of delivery. Vickery v. McCormack, 117 Ind. 594, 20 N. E. 495; Capen v. Glass Company, 105 Ill. 185; Cobb v. Whitsett, 51 Mo. App. 146; Benjamin on Sales, page 883; Haskell v. Hunter, 23 Mich. 305; Nottingham Ice Co. v. Preas, 99 Va. 285; Righter v. Clark, 78 Conn. 9. (2) The true test as to the allowance of interest on a claim is whether the exact pecuniary amount of the claim is ascertainable by simple computation, such as the market price of a commodity, and whether the time from which interest must run, can be definitely ascertained. 1 Sedgwick on Damages (8 Ed.), sections 299, 300, 315; 1 Sutherland on Damages, page 610; Thomas v. Wells, 140 Mass. 517; Sullivan v. McMillan, 37 Fla. 134; Brown v. Doyle, 69 Minn. 543; Padley v. Catterlin, 64 Mo. App. 629; McCormack v. Lynch, 69 Mo. App. 524; Webster v. Railroad, 116 Mo. 114; McBeth v. Craddock, 28 Mo. App. 380; Goodman v. Railroad, 71 Mo. App. 460; Atkinsson v. Steamboat Castle Garden, 20 Mo. 127.

REYNOLDS, P. J.—On October 19, 1908, plaintiffs, partners, addressed to defendant a letter in which they stated that they accepted the proposition of defendant on a "bill of No. 1 yellow pine, to be delivered at New Castle, Ind., as follows." Included in the bill were 185,000 feet 3x6 flooring or ceiling, ap-

parently ten and twenty feet long, "D. & M & Beaded, five and one-quarter inch face by two and one-quarter full, about one-third ten feet and two-thirds twenty feet. The 3x6s must be dry." The letter continued: "The carload of dimensions we want as soon as possible, and you can commence shipping on the 3x6s at your earliest convenience; but the delivery of all of the 3x6s and dimensions must be made by January 1, 1909." It is further set out that the price on the dimensions and 3x6s was $18 per thousand f. o. b. New Castle, Ind. "Terms regular. Shipments of above to be made to the C. C. Thompson Lumber Co., New Castle, Ind., care Maxwell-Briscoe Motor Co. switch." Plaintiffs transmitting this letter, signed by them to defendant, the latter wrote at the foot of it, "Accepted," this being signed by one of its managers.

For a failure to deliver the 3x6 lumber above mentioned on or before January 1, 1909, plaintiff brought this action.

Setting out the agreement substantially as above and averring that plaintiffs had duly performed all the conditions of the agreement on their part and were, on January 1, 1909, at New Castle, Ind., ready and willing to receive and pay for the lumber, it is averred that shortly prior to the first of January, defendant tendered two cars of lumber purporting to be a portion of the 3x6 lumber mentioned in the agreement, but that the lumber was green, not beaded properly, not of proper length and not such lumber as was called for in the agreement; that plaintiffs rejected the two cars of lumber and at the request of defendant unloaded the lumber from the cars, stacked it and held it subject to disposition by defendant.

It is further averred that defendant failed to deliver to plaintiffs any of the 3x6 lumber provided for in the ageement set out "and that defendant was informed at the time the contract was entered into by the plaintiffs that said lumber must be delivered on

or before the first day of January, 1909; that defendant was informed at the time the agreement was entered into by plaintiffs that said lumber was to be used in the erection of a building at New Castle, Ind., by the Maxwell-Briscoe Motor Company, and that defendant was informed by the plaintiffs that said plaintiffs were under contract to furnish said lumber to the Maxwell-Briscoe Motor Company, on or before the first day of January, 1909; that upon the failure of defendant to furnish said lumber as agreed, said Maxwell-Briscoe Motor Company compelled them to fulfill the terms of their contract, and that said plaintiffs were compelled to go into the open market and purchase said lumber in order to fulfill its contract with the Maxwell-Briscoe Motor Company; that said plaintiffs did purchase said lumber in the open market, at the market price in New Castle, Ind., on said first day of January, 1909; that the market price of said lumber on the first day of January, 1909, at New Castle, Ind., for 185,000 feet of said lumber was the sum of $4070, or the sum of twenty-four and 28 48-185 dollars ($24.28 48-185) per one thousand feet.''

It is further averred that plaintiff paid the freight on the two cars of lumber so rejected, amounting to $204.30; that they had paid the further sum of $9.80 for unloading the cars and $13.06 for moving the lumber contained in the cars and cross-piling and protecting it at defendant's request. It is further averred that upon the failure of defendant to so deliver and in an effort to purchase like lumber elsewhere, plaintiffs had paid out the sum of $85 in sending their agent to Meridian, Mississippi, the headquarters of defendant, and to Chicago, Illinois. Avering that the difference in the contract price of the 3x6 lumber and its market price at New Castle, Ind., on the first day of January, 1909, amounted to $1162.28, and setting out the expenses above referred to, judgment was demand-

ed for $1474.44, with interest from the date of the institution of the suit and for costs.

The answer was a general denial.

There was a verdict for plaintiffs in the sum of $1388.44 for the debt and $202.70 for interest, a total of $1591.14.

Filing a motion for new trial and excepting to the action of the court in overruling it, defendant has duly perfected its appeal to this court.

An analysis of the verdict shows that the jury did not allow the $85 said to have been paid out to the agent of the plaintiffs in sending that agent to Meridian and Chicago, so that is out of the case. It further appears, on an analysis of the verdict, that the jury allowed as damages the difference between the contract price and the price which plaintiffs paid for the lumber, that is to say, about $6.28 a thousand, and that it allowed $204.30 for freight on the two cars of rejected lumber and $22.86 for unloading and moving that lumber. It also appears that the jury awarded interest at six per cent on the sum of the items so allowed.

There is practically no controversy in the case as to the correctness of the allowance for the expenses connected with the rejection of the two cars of lumber, that is to say, the freight and handling of these two cars.

The errors assigned are to the allowance of the difference between the contract price of the 185,000 feet and the price paid by plaintiffs for the like quality of lumber which it purchased, that is to say, $6.38, as stated. The correctness of the allowance of interest is also challenged.

At the trial of the cause, which was before the court and a jury, under the promise of counsel for plaintiffs that he would show that at the time of making the contract plaintiffs had informed defendant of the special purpose for which the lumber was designed;

and of the importance of having it delivered within the time specified in the contract, the court admitted the evidence. There is, however, a complete absence of any evidence bringing home any knowledge of this to the defendant at the time of entering into the contract, or for that matter, until some time after the contract had been made and breached. Defendant undertook to take this from the jury in two instructions which it asked but which were refused, defendant excepting.

The rule to be applied and the principles of law underlying its determination are as announced in Hadley v. Baxendale, 9 Exch. 341, 26 Eng. L. &. Eq. 398, which ever since that case was decided have been followed in many cases, and is the accepted law in this State.

The first of the rules announced in Hadley v. Baxendale, supra, requires that the damages shall be the natural result of the breach; that is, must be immediately connected with the breach of the contract and not merely connected with it through a series of causes intervening between the immediate consequences of the breach and the damage complained of. Another of the rules announced, somewhat enlarging the first, is, that the damage may include such matters as both parties, in making the contract, might reasonably expect to be the consequences, in the particular case, of its breach and in regard to which, therefore, they must be taken to have intended to contract. It is under this latter rule that a recovery for anticipated profits and their loss which might reasonably be supposed to have been in contemplation of both parties, is allowed. It is further within these rules that any special loss which might accrue to plaintiff, but which would not naturally and obviously fall from the breach but for special circumstances in the contract, is not recoverable, unless it be shown that those circumstances, at the time the contract was entered into, were known to

the defendant; in which case the law presumes that the consequences of the breach were contemplated. This last principle is very fully illustrated in a leading case in this country, namely, Leonard v. New York, etc., Tel. Co., 41 N. Y. 544.

In the case at bar there was a complete failure of evidence tending to show that the purpose and necessity of prompt delivery within the time specified was brought home to defendant; was known to it, when it entered into this contract. Hence the evidence of plaintiffs as to the intended use and importance of immediate delivery should have been withdrawn from the jury.

It appeared in the trial of the case that the lumber of the kind specified and contracted for not being delivered within the time required under the contract, and plaintiffs having no assurance that it would be delivered to them within a reasonable time, went to Chicago, Illinois, and making inquiry there of four or five dealers in yellow pine, managed to secure the 185,000 feet at the price before stated, that is, at $22 a thousand f. o. b. cars Chicago. The freight from Chicago to New Castle was nine cents per 100 pounds, so that the freight added to the purchase price about $2.28 or $2.30 per thousand feet, making the total about $24.28 or $24.30 per thousand feet.

It is contended by counsel for defendant, first, that there was no evidence that Chicago was the nearest and most available and suitable market for the purchase of this lumber; second, that there was evidence to the contrary and tending to show that the St. Louis market was the controlling and most available market, and in that sense nearest market to New Castle; third, even conceding that there was a conflict in the evidence as to this, the question was not only not properly submitted to the jury, but submitted in a misleading form.

It was conceded that there was no market at New Castle, Ind., at the time for this quality of lumber.

Under the ruling of the court and the insistence of counsel for plaintiffs, the court compelled defendant, in examining its witnesses as to the price at the time of the breach at the St. Louis market, to include with the question of the then market price, the element of that price as on the basis of "immediate delivery." It was the contention of defendant that it was entitled to show that the market price of like lumber at the time on the St. Louis market at about the first of January; buying the lumber then and there in the usual and ordinary course of business.

In the light of the testimony in the case as to which was the proper market, the Chicago or the St. Louis market, and in the light of the ruling of the court that in determining the market value of the lumber the jury should take into consideration the fact that it was to be purchased for immediate delivery, the third instruction given by the court at the instance of plaintiff is incorrect in this: That instruction told the jury, "in determining the market price of lumber of the character agreed to be furnished by defendant in its contract on the date delivery of the same should have been made, you will take into consideration only the market price, if any, of such lumber at New Castle, Ind., and if you find there was no market for such lumber at said place, *then you should find what the market value of said lumber was at the nearest market to New Castle, Indiana, where same could be obtained, or the market where the same could be obtained upon the most advantageous terms, under all the facts and circumstances in the case, for delivery then free on board cars at New Castle, Indiana.*" The part we have italicized is the objectionable part of this instruction. Even if defendant is incorrect in saying that there was no testimony that the Chicago market was neither the nearest nor most advantageous market, we may con-

cede that there was testimony covering it. The tendency of this instruction was, in the first place, to allow the jury to conclude that the Chicago market was to govern, because geographically, by railroad miles, it was nearer to New Castle by some ninety miles than St. Louis. That would not be correct. The proper market would be the customary market; that most available and advantageous; not necessarily the shorter in miles, but the best, most available market, the nearest controlling, usual market for this class of lumber, and where it could have been obtained, taking into consideration also freight rates and the capacity of the market. It was not its geographical distance from the place of delivery that would necessarily control.

Furthermore, in saying that the jury should find what the market value of the lumber was at the nearest market "where same could be obtained," and then following it with the words "or the market where the same could be obtained upon the most advantageous terms," was contradictory. These are, or may be, very different questions. The nearest market, geographically, as we have stated, might not have been the market where the lumber could be obtained on the most advantageous terms. So that in itself this clause of the instruction was misleading and confusing and a misdirection on a vital question.

Furthermore, in this instruction the court evidently enforced the theory upon which plaintiffs insisted upon trying the case and to which theory the court assented when it followed these words with these: "under all the facts and circumstances in the case, for delivery then free on board cars at New Castle, Indiana." This phrase obviously can refer to nothing but that the price "for immediate delivery," was to govern and that the jury were to consider the purpose for which plaintiffs intended to use the lumber. This was error.

It follows that the court committed error in refusing an instruction asked by defendant, to the effect that "all evidence as to the condition of any building upon the day you may find from the evidence delivery of the lumber in controversy should have been made, or of the necessity for the use of such lumber in the construction of such building at such time, must be disregarded by the jury."

As the case will have to be retried we will say that on the conceded facts as to the expenses connected with the two cars of rejected lumber, plaintiffs were clearly entitled to recover that, and hence it would have been error to confine the jury to assessment of nominal damages.

As to the proposition made by counsel for defendant, that interest is not allowable from the date of the institution of the action because, as it is claimed, this action seeks to recover for profits, we do not agree with counsel. This is not an action for profits but is for actual damages sustained and growing out of the breach of a contract by reason of the non-performance of it by defendant. Counsel for defendant relies upon Underwood Typewriter Co. v. Century Realty Co., 165 Mo. App. 131, 146 S. W. 448, for their contention that interest is not allowable. There it is said by Judge NORTONI, who wrote the opinion (l. c. 141): "There can be no doubt that under our statute (section 7179, Revised Statutes 1909), interest may be recovered for damages which accrue on the breach of a written contract in many cases. For instance, where a written contract was breached and the loss entailed was the difference between the contract price of goods sold and the market value of the same goods at the time defendant refused to receive them, this court declared interest was recoverable thereon. [See Nelson v. Hirsch & Sons, etc., Co., 102 Mo. App. 498, l. c. 517, 77 S. W. 590.]" As was determined in the Underwood case and in many other cases, when the only dam-

ages sued for are the loss of profits, interest is not recoverable. That, however, is not this case, but is an action to recover loss actually sustained by reason of nondelivery, that is, the difference between the contract price and the price it is alleged plaintiff was compelled to pay to obtain the lumber of the quality contracted for.

We add this: That if the case is retried, the law applicable to it is well stated in National Warehouse & Storage Co. v. Toomey, 144 Mo. App. 516, 129 S. W. 423. While it was an opinion by Judge GRAY, rendered in the Springfield Court of Appeals, in a case over which it was held that court had no jurisdiction, that opinion was afterwards approved by us in the same case, as see 160 Mo. App. 622, 140 S. W. 1196.

The judgment of the circuit court is reversed and the cause remanded. *Nortoni* and *Allen, JJ.,* concur.