# OCTOBER, 1925.

ORA M. REGER AND W. S. SHATTO, RESPONDENTS, v. FIRST NATIONAL BANK OF MILAN, MISSOURI, A BANKING CORPORATION, LENNY BALDRIDGE, AND HOMER A. HIGGINS AND A. RALPH McDUFF, A PARTNERSHIP DOING BUSINESS IN MILAN, SULLIVAN COUNTY, MISSOURI, AS BROKERS, ABSTRACTORS AND LOAN AGENTS UNDER THE FIRM NAME AND STYLE OF HIGGINS & McDUFF, APPELLANTS.*

Kansas City Court of Appeals. January 11, 1926.

*Corpus Juris-Cyc, References: Actions, 1CJ, p. 1069, n. 59. Conspiracy, 12CJ, p. 540, n. 4; p. 581, n. 62; p. 582, n. 64, 65; p. 584, n. 81; p. 629, n. 96, 97; p. 639, n. 90; p. 640, n. 95 New.

*John H. Taylor, R. E. Ash* and *W. H. Childers* for respondents.

*Culfee & House* for appellant, Higgins & McDuff; *H. J. West, L. E. Atherton* and *Hudson, Weatherby & James* for appellant Bank.

ARNOLD, J.—In this action plaintiffs seek cancellation of a certain alleged spurious deed of trust and to recover damages for alleged fraud. The amended petition is in two counts of which the first asks to have the alleged spurious deed of trust cancelled and annulled because procured by conspiracy, fraud and deceit. The second is for damages resulting from the alleged conspiracy.

Plaintiff Ora M. Reger owned 688 acres of land in Sullivan county, Missouri, encumbered for $26,000. Negotiations were pending for a new loan of $30,000, part of the proceeds to be used to take up the old loan. In July, 1919, Reger entered into a verbal contract with defendants Higgins & McDuff, real estate and loan agents at Milan, Mo., to sell said land at $75 per acre, or an aggregate of $51,600 for which the agents were to receive a commission of $1 per acre. Said agents procured a purchaser in the person of one Herbert Williams, at the price mentioned in the verbal contract, and on August 19, 1919, Reger and Williams entered into a written contract whereby Williams agreed to buy the land at the price above mentioned. The terms of the contract provided for the payment by Williams of $1000 in cash on the execution of the contract, $4000 when the deal was closed, and the assumption by Williams of the $30,000 encumbrance. It was further provided that Williams should execute a second deed of trust for $16,600, deferred payment, to Reger and his son-in-law W. S. Shatto, the other plaintiff herein.

At the time the contract was entered into between Williams and Reger, Williams owned a note for $5200 made by one Emery D. Myers and secured by a deed of trust on 160 acres of land in Sullivan county, which Williams had sold, or traded, to Myers. It was the intention of Williams to dispose of the Myers note and thereby secure the $4000 he was obligated to pay Reger by the terms of the contract. However, at the time Reger was ready to close the deal, January 17, 1920, Williams found he was unable to dispose of said note, whereupon defendant McDuff arranged with defendant the First National Bank of Milan (of which Lenny Baldridge was cashier) for a loan to Williams of $4000, for which Williams and Higgins & McDuff were to give their note to the bank, including one year's interest, or $4320, due in one year at eight per cent interest from maturity. As collateral for this note, Williams and his wife were to give their note to Higgins for $4000, due in one year, secured by a deed of trust on the 688 acres of land, which note, together with the deed of trust securing same, and the Myers note and deed of trust for $5200, were to be assigned and held by said bank as collateral.

Pursuant to the contract, Reger executed his deed to the 688 acres of land and left it with Higgins & McDuff to close the deal with Williams, expecting them to collect the $4000 cash payment and to take back from Williams a second deed of trust for the $16,600. However, when the $4000 was borrowed from the bank a second deed of trust as security therefor was placed on the 688 acres of land and recorded, and plaintiffs received only a third deed of trust for the $16,600 indebtedness. The evidence shows that plaintiffs did not know of the deed of trust to the bank until long after the deal was closed. Shortly after the deal was closed, Reger got the Reger and Shatto notes from Higgins & McDuff and took them for safe-keeping to the Citizens International Bank at Milan, and a little later, assigned them to that bank as collateral for some debt Reger owed the bank. It was after this transaction that Reger discovered that his deed of trust was a third, instead of a second. He then complained to McDuff and later to Baldridge that he had been defrauded and that the matter would have to be adjusted.

There were several conversations between the parties, the exact purport of which is in dispute. The testimony shows that defendant Bank, on April 6, 1922, sold and endorsed without recourse the $4320 note to the Citizens International Bank and also turned over to that bank the collateral notes and deeds of trust. Sometime after the purchase of the $4320 note, it was sold by the bank to its president Frank O. Custer, who thus became the owner and holder of said note and the security that went with it. Williams being desirous, thereafter, of renewing the Myers loan (having been compelled to take back the land from Myers) arranged with Custer to release the deed

of trust on the Myers land long enough to permit him to get a new loan. A new loan was secured and by payment the $4320 note was reduced to $3850, for which amount a new note was given, secured by a deed of trust on the Myers land, subject to the new loan and a chattel mortgage on some stock.

When Higgins endorsed the $4000 note to the First National Bank at the time the $4000 loan was made, he signed his name on the back thereof; but sometime in the spring of 1920, while this suit was pending and shortly before the trial, Custer took the note to Higgins and had him write the words "without recourse" above his (Higgins) name. This was done without the knowledge of the First National Bank. Williams was unable to meet his payments and the 688 acres of land reverted to Reger.

The petition is in two counts, the first of which seeks to cancel the $4000 deed of trust on the ground that defendants Higgins & McDuff, Baldridge and the First National Bank fraudulently conspired together to secure the same as a second deed of trust ahead of plaintiffs' deed of trust for $16,600. It is not charged therein that Williams and his wife were parties to said alleged fraud.

The second count of the amended petition seeks damages in the following language: ". . . that the said Higgins & McDuff, agents of plaintiff Ora M. Reger, Lenny Baldridge and First National Bank, Milan, Missouri, and the other defendants herein, did, on or about the — day of January, 1920, wrongfully, deceitfully and fraudulently conspire and confederate together for the wrongful and unlawful purpose of then and there fraudulently and unlawfully to cheat, wrong and defraud plaintiffs, and especially the plaintiff Ora M. Reger, out of his security for the payment of said three negotiable promissory notes, by then and there wrongfully and unlawfully combining and confederating together to wrongfully and unlawfully deceive and procure the purchaser of said lands, Herbert Williams, from executing and delivering to plaintiff, Ora M. Reger, a second deed of trust on said lands to secure the payment of said three negotiable promissory notes; and did then and there, wrongfully and fraudulently deceive and procure him, the said Herbert Williams, to execute and deliver to said defendant Homer A. Higgins a second deed of trust on said 688 acres of land as trustee for said defendant First National Bank, thereby cheating and defrauding; and then and thereby intending to cheat, wrong and defraud; and did then and there and thereby, intentionally, wrongfully, unlawfully and fraudulently cheat, wrong and defraud these plaintiffs, and especially the plaintiff Ora M. Reger, out of a second deed of trust on said 688 acres of land, to plaintiff's damage in the sum of $14,682.95, as follows:

"'Money and cash paid out to protect interest of plaintiff from the sale of said 688 acres of land, as interest, ...................................... $2900.00
"To cash paid in taxes ......................... 1054.20
"To loss from use of land in rents ................ 6588.75
"To loss of second deed of trust security .......... 4320.00,''
etc.

Herbert Williams, Virgie Williams, the Citizens International Bank of Milan and Frank O. Custer were also made defendants but they interposed no defense in the court below, nor are they represented in this appeal. All the other defendants appeared and defended in the court below and are represented here, and all filed demurrers to the petition which were overruled, whereupon they filed separate answers to the amended petition.

These answers admit formal matters but deny specifically that conspiracy, fraud and deceit entered into the procurement of the deed of trust for $4000, declare plaintiffs were in full possession of all the facts surrounding the execution of the said deed of trust and deny generally all matters in the petition not specifically admitted in the answers. The reply to the separate answers was a general denial. Upon the issues thus made the cause went to trial to the court without the aid of a jury.

At the beginning of the trial counsel for the respective parties made opening statements to the court, in the course of which counsel for defendants admitted that the note for $4320 for which the alleged fraudulent second deed of trust was collateral had been fully paid and discharged. Whereupon, on motion of plaintiffs' counsel, the court entered the following order:

"Wherefore, by reason of the admission of the said defendants that the note secured by said deed of trust has been fully paid and discharged: It is considered, ordered and adjudged by the court here, that said second deed of trust by the said defendants, Herbert Williams and Virgie Williams, his wife, to the defendant, H. A. Higgins, in trust for the use and benefit of said defendant First National Bank of Milan, Missouri, to secure the payment of a promissory note for the principal sum of $4320, dated on or about the 17th day of January, 1920; and recorded in the recorder's office of Sullivan county, Missouri, in deed book 72 at page 614, be and is hereby cancelled, set aside, annulled and for naught held in law and in equity, and that the plaintiffs have and recover of and from the said defendants their costs in this behalf expended, taxed at the sum of $———, and that they have hereof execution."

Prior to the taking of testimony in the case, defendants the First National Bank, Lenny Baldridge, Homer A. Higgins and A. Ralph McDuff filed requests "for the court to make a finding of facts in

this cause, stating in writing his conclusions of facts found separately from his conclusions of law." The findings of fact by the court, in part, are as follows:

"The court further finds that the defendants, First National Bank of Milan, Missouri, Lenny Baldridge, Homer A. Higgins and A. Ralph McDuff appeared in person or by counsel and participated in said trial. The court further finds under the evidence that the defendants, Herbert Williams and his wife, Virgie Williams, Frank O. Custer and the Citizens International Bank, a banking corporation of Milan, Missouri, are not guilty of the conspiracy charged in said plaintiffs' petition and that they go hence without day.

"The court further finds under the evidence that the First National Bank of Milan, Missouri, Lenny Baldridge, Homer A. Higgins and A. Ralph McDuff are guilty of the conspiracy as charged in the plaintiffs' petition.

"The court further finds from the evidence that the plaintiff, Ora M. Reger, in order to protect his interest in said lands obligated himself to pay the sum of $2900 in interest on the indebtedness secured by deed of trust and $1054.29 in taxes.

"The court further finds that the said plaintiff lost in rents and profits from the use and occupancy of said lands the sum of $6588.75, by being deprived of the use and occupancy of said premises."

And the court gave the following declarations and conclusions of law:

"Wherefore, as a matter and conclusion of law of the foregoing special findings and conclusions of facts heretofore found by the court, the court finds for the plaintiffs on the second count of their petition in the sum of $6588.75, the value of the rents and profits of said 688 acres of land.

"Wherefore, it is ordered, adjudged and decreed by the court that the plaintiffs have and recover of and from the said defendants, First National Bank, a banking corporation of Milan, Missouri, Lenny Baldridge, Homer A. Higgins and A. Ralph McDuff, and of and from them jointly and severally the sum of $6588.75, with interest at six per cent and costs in this behalf laid out and expended."

Motions for new trial and in arrest were without avail and defendants First National Bank, Lenny Baldridge, Higgins & McDuff, appeal. A brief is filed in this court in behalf of the First National Bank and Baldridge, by their counsel, and a separate brief is filed by counsel representing Higgins & McDuff, but as the charges of error in each are identical, they will be considered together.

A motion was filed in behalf of plaintiffs asking that the appeal be dismissed on the ground that our Rule 15, has been violated, but the motion is overruled as we find the charge to be without merit.

The first charge of error is that the court erred in refusing to sustain the demurrer offered by defendants to the second count of the

petition, after rendering judgment for plaintiffs on the first count, directing the cancellation of the alleged spurious deed of trust. The reasons assigned are that the second count fails to allege that plaintiff Reger carried out his part of the contract with Williams for the sale of the land, or that he was able and willing to do so. It is argued that unless Reger was able and willing to carry out his part of the contract by conveying the land to Williams, or in fact did convey the land to him, he could not be damaged by anything defendants may have done to prevent Williams from performing his part of the contract.

This is not a suit on the contract between Reger and Williams, nor do the appellants so claim; but the second count sounds in damages for fraud and deceit in the procurement of the alleged spurious deed of trust. If an allegation that Williams was ready, able and willing to carry out his part of the contract were necessary (which we are not here declaring), we think the second count fully meets the objection. The petition states that "Higgins & McDuff, agents as aforesaid, did sell lands under the contract aforesaid, to defendant Herbert Williams, and said Williams agreed to take and pay for said lands under the contract, and in manner and form aforesaid, did execute and deliver the three notes described as aforesaid . . ." There would seem to be no more effective way of saying that Williams was ready, able and willing to perform his part of the contract than to say that he actually did perform it. Further discussion of this point is unnecessary.

Under a subdivision of this charge it is said that the count fails to allege the amount of the deed of trust in controversy, its nature, whether it was a deed of trust to secure the payment of money, whether it was in the nature of a mortgage, or what it was. The gist of the action as reflected in the second count of the petition is based upon fraud, in the following language: ". . . did on or about the —— day of January, 1920, wrongfully, deceitfully and fraudulently conspire and confederate together for the wrongful and unlawful purpose of then and there fraudulently and unlawfully to cheat, wrong and defraud plaintiffs and especially the plaintiff Ora M. Reger, out of his security for the payment of said three negotiable promissory notes . . ."

We must hold that since the gravamen of the action as charged in this count is the alleged fraudulent acts of appellants in depriving plaintiffs of their security, the amount of the alleged fraudulent deed of trust and the nature of it, while incidental to the cause of action, are not material and that the petition is not materially defective in the respect charged.

The same ruling applies to the objection that the count failed to charge that plaintiffs ever had a deed of trust against the land in

question. The petition sets out the separate amounts of the several notes to be given Reger by Williams, in the total amount of $16,600, that Reger was to have a second deed of trust as security therefor, and we think appellant's objection, in this respect, sufficiently answered.

Under subdivisions d, e, f, g, h and i, it is charged (d) that while the petition alleges the reasonable value of the land to be $51,600 which is more than the $30,000 first encumbrance, and the $16,600 for which plaintiffs were to have a second encumbrance, in the absence of an allegation as to the amount of the offending deed of trust, it would appear that the security was not in any way impaired; (e) that there is no allegation that Williams and his wife were insolvent; (f) that it does not charge that plaintiffs ever paid out anything on account of the offending deed of trust, nor that the said deed of trust was still unpaid .and an outstanding encumbrance against the land; (g) it fails to allege that plaintiffs, in fact, did pay out any money, as interest, to protect their interest in the land; (h) that the count is deficient because it charges that Williams, one of the defendants, was cheated, wronged and defrauded, it being an incongruity to charge that Williams conspired to cheat himself; that the count fails to meet the elementary rule that in pleading fraud, the constitutive facts and not mere conclusions must be alleged.

It is true that in neither count does the petition plead, in terms, the amount of the offending deed of trust which the evidence shows was $4000. But since the gravamen of the action is conspiracy and fraud in the procurement of said deed of trust, the amount thereof was not material. Nor was it necessary to plead that Williams and his wife were insolvent, or that plaintiff ever paid out anything on account of said second deed of trust; that it was outstanding and unpaid and that plaintiffs had no money to protect their interest in the land. The petition does charge with particularity that Williams was fraudulently induced to execute the offending deed of trust and that plaintiffs were damaged thereby in being without the use and rental of the land during a specified period, but it does not charge that Williams conspired to cheat himself. We find no error in the overruling of the demurrer to the petition.

The second assignment of error is that defendants' motion to require plaintiffs to elect should have been sustained because the two counts in the petition are inconsistent with each other, the first seeking a cancellation of the $4000 deed of trust and the second asking damages because of its existence. Counsel state, however, that this is a matter of minor importance now since plaintiffs, by taking judgment on the first count, have made their election.

For a third assignment of error it is insisted defendants' motion to strike out the second count of the petition, after the court had rendered judgment on the first, cancelling the $4000 deed of trust,

should have been sustained because the relief sought under the second count was wholly inconsistent with that already granted under the first; that the two counts are inconsistent, the first being founded upon an affirmance and the second upon a disaffirmance of the deed of trust.

On this point appellants rely chiefly upon the case of Light & Power Co. v. Machine Co., 170 Mo. App. 224, 156 S. W. 83, and cases therein cited. It was there held that if the amendment of a petition, changing it from one in damages for breach of contract to one for the recovery of the purchase price on a rescinded contract, be a departure, in that case the departure was waived by the defendant since it filed no motion to strike out said petition but afterwards litigated the issues raised ·by the amended petition. Certainly this is good reasoning, but there is little similarity between that case and the one at bar. Here, counsel seem to have fallen into the error of treating the case as a suit on contract and now urge that it is such, while, in fact, the action is not based upon the contract between Reger and Williams nor upon any other contract. The first count charges fraud and conspiracy and the second sounds in damages by reason of such fraud. We see no inconsistency in the two counts.

It now remains to be determined (1) whether the trial court erred in finding the First National Bank and Lenny Baldridge were guilty of fraud and conspiracy as charged in the petition and (2) whether the court erred in finding that the evidence established recoverable damages against defendants.

As stated, the cause was tried upon the second count of the petition which alleges fraud and conspiracy on the part of defendants in inducing Williams to execute and deliver to Higgins a second deed of trust while Williams was under contract to execute and deliver a second deed of trust to plaintiffs on the lands in question. The term "civil conspiracy" is ably discussed and tersely defined in the case of Harrelson v. Tyler, 281 Mo. 385 (opinion by RAGLAND, C.) l. c. 399, et seq., where it is said:

"A 'civil conspiracy' is said to be a combination of two or more persons to accomplish, by concerted action, an unlawful or oppressive object; or a lawful object by unlawful or oppressive means. To sustain an action, damage must have resulted from the combination; to warrant an injunction, damage must be threatened. [National Fireproofing Co. v. Builders' Assn., 169 Fed. 259; State ex rel. v. Associated Press, supra; Walsh v. Association, 97 Mo. App. 280.] The principle which determines whether the object sought to be effected by two or more persons acting in concert is legal or illegal cannot be stated more clearly than was done by the court in National Fireproofing Co. v. Builders' Assn., supra, at page 265: 'The direct object or purpose of a combination furnishes the primary test of its

legality. It is not every injury inflicted upon third persons in its operation that renders a combination unlawful. It is not enough to establish illegality in an agreement between certain persons, to show that it works harm to others. An agreement entered into for the primary purpose of promoting the interest of the parties is not rendered illegal by the fact that it may incidentally injure third persons. Conversely, an agreement entered into for the primary purpose of injuring another is not rendered legal by the fact that it may incidentally benefit the parties. As a general rule it may be stated that, when the chief object of a combination is to injure or oppress third persons, it is a conspiracy; but that, when such injury or oppression is merely incidental to the carrying out of a lawful purpose, it is not a conspiracy.''

Applying this rule we find plaintiffs' evidence fails to establish their charge of conspiracy, for the reason that the direct object and purpose of the second deed of trust was to effect a loan to Williams in order that he might make the cash payment to plaintiffs under the terms of the contract. This purpose was lawful in itself. If any unlawful element was present in the transaction it is to be found in the fact that the deed of trust securing the $4000 was given to defendants as a second deed of trust when Williams was under contract to give a second deed of trust to plaintiffs. There is no evidence that either the defendant Bank or Baldridge connived with Williams or with Higgins & McDuff to the damage of plaintiffs. Under the pleadings plaintiffs were required to show that by prearrangement, with the ultimate object to defeat the claims of Reger, there was such connivance. There is no such evidence of record and it must be held, therefore, that plaintiffs have failed in their proof. The trial court erred in holding to the contrary. Where conspiracy is charged substantial proof of such conspiracy must be produced. Here, as stated, the gist of the action is the damage inflicted, but such damage must be in pursuance of the conspiracy and since no actionable conspiracy is shown herein, plaintiffs' claim fails. [Darrow v. Briggs, 261 Mo. 244; Carder v. Drainage Dist., 262 Mo. 542.] We hold the court erred in overruling defendants' demurrer to the evidence.

One other point demands consideration. It is charged the court erred in rendering judgment against Higgins & McDuff in the sum of $6588.75 for loss to plaintiffs in rents and profits by depriving plaintiffs of the use and occupancy of the land. The language of the court was ''the rents and profits of said 688 acres of land.'' To sustain this finding there must be substantial proof that plaintiffs, in fact, were deprived of the use and occupancy of the land by some unwarranted act or acts of said defendants, and it must be concluded that if the delivery of the second deed of trust did not serve to de-

prive plaintiffs of the use of the land, then the court was in error in entering said judgment. It must be held there is no showing that any loss of rents or profits was traceable to Williams' breach of the contract. Reger testified that had he known they were going to put a second deed of trust on the land in favor of Higgins, he would not have made the deal, but there is no charge made, nor any proof offered, to the effect that Reger was induced by fraud to enter into the contract with Williams. Plaintiffs do claim that the breach of the contract by Williams was induced by fraud, but under the facts in evidence, it does not so appear. The court erred, therefore, in rendering said judgment against Higgins & McDuff. [Tucker v. Deering, 133 Mo. App. 122, 113 S. W. 242; Weber Imp. Co. v. Machine Co., 268 Mo. 363, 187 S. W. 874; Howell v. Railway Co., 171 Mo. App. 92, 153 S. W. 578; Gourley v. Lumber Co., 185 Mo. App. 360, 170 S. W. 339; Hunter v. Sloan, 195 Mo. App. 69, 190 S. W. 57; Thompson v. Nowell, 118 Mo. App. 405, 94 S. W. 557.]

For reasons above stated, the judgment as to the second count is reversed.

*Bland, J.,* concurs in the result on the ground that no conspiracy was shown. *Trimble, P. J.,* absent.