# WEBER IMPLEMENT COMPANY, Appellant, v. ACME HARVESTING MACHINE COMPANY.

### Division One, July 3, 1916.

1. **REFEREE: Findings of Fact: Appeal.** Where the case is neither an equitable suit nor one wherein a reference of the issues would have been compulsory under the statute, the findings of fact by the referee, if supported by any substantial evidence, are conclusive on appeal.

2. ————: ————: **No Appeal from Finding.** The failure of the defendant, who the referee found had breached its contract, to appeal from the judgment of the trial court affirming the referee's findings of fact, closes the door to any reinvestigation of the facts at its instance.

3. **BREACH OF CONTRACT: Damages: Loss of Profits.** Damages for a breach of a contract are such as may fairly and reasonably be considered as arising either naturally (that is, according to the usual course of things) from such breach itself, or such as may reasonably be supposed to have been in contemplation at the time they made the contract, as the probable result of the breach. This rule does not include speculative profits or accidental or consequential losses, or losses of a fancied good bargain. It includes proximately caused or reasonably contemplated losses, and excludes the problematical profits of future bargains.

4. ————: ————: ————: **Consummated Sales.** Where a manufacturing company agreed to make and furnish to a wholesale jobber one thousand mowing machines of a certain brand, to be resold to users, and breached the contract, it is liable to the jobber for profits lost on so many of the machines as were actually sold by the wholesaler to his vendees, which it refused to deliver, but not for profits the wholesaler might have made on so many of the machines as were not sold or contracted for sale by him.

5. ————: ————: ————: ————: **Duty to Minimize Loss.** It is the duty of the party injured by a breach of a contract to take reasonable steps to minimize the loss; but it is not such party's duty to alter the terms of his agreement for that purpose in the circumstances shown in this case.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED (*with directions*).

*Morton Jourdan* and *Sparrow, Page & Rea* for appellant.

(1) The trial court was wrong in holding that profits are not recoverable and that appellant was only entitled to recover nominal damages. We recognize the well established general rule to be, as stated by the courts, that on failure of the vendor to deliver goods according to contract, the *ordinary* measure of damages is the difference between the contract price and the market value of the goods at the time when, and the place where, they should have been delivered; but the courts recognize an exception to this rule, and it is this exception that is applicable to the facts of this case. Appellant sues here for special or consequential damages. If under the facts of a particular case, the difference between the contract price and the market value at the time and place of delivery of the goods, will compensate the injured party, the general rule above quoted should be, and is, applied by the courts; but what about the case, under the facts of which the difference between the contract price and the market value at time and place of delivery will not compensate the injured party? Such is the case at bar. This is not a case where appellant could have gone into the open market and bought the goods contracted for and the referee so found. These machines were not manufactured by anyone but respondent. Appellant tried to get them elsewhere, but was unable to do so. It is in such a case that the exception to the general rule applies. The profits which appellant expected to realize from a resale of these machines being that which induced it to enter into the contract of purchase

with respondent, it is absurd to say that after respondent has violated its contract and refused to deliver the mowers, appellant can be reimbursed for any loss sustained by it by the difference in contract price of mowers and their market value at time and place of delivery. These profits were within the contemplation of the parties at the time the contract was entered into, and became therefore part and parcel of it. Respondent knew that appellant was purchasing these mowers for the purpose of resale. It knew that appellant expected to sell them at a profit. Knowing this fact, it also knew that if it failed to deliver the mowers, appellant would be deprived of the profits at which it not only expected to sell, but could and would have sold them, if delivered. Chalice v. Witte, 81 Mo. App. 92; Hadley v. Baxendale, 9 Exch. 341; Hammond v. Beeson, 112 Mo. 190; Lumber Co. v. Warner, 93 Mo. 374; Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 336. (2) Appellant in any event, is entitled to recover $1828.50, the amount of its lost profits on the 230 machines which it had actually sold at the time of respondent's breach of its contract.

*New, Kennish & Krauthoff, Maurice H. Winger, Arthur Miller* and *P. E. Reeder* for respondent.

(1) Appellant under its amended petition was only entitled to nominal damages. Wall v. Ice Co., 112 Mo. App. 666; Northrup v. Cook, 39 Mo. 208; Warren v. Maher Mfg. Co., 161 Mo. 124; Griffith v. Kansas City Co., 46 Mo. App. 539; Van Stone v. Hopkins, 49 Mo. App. 386; Cobb v. Whitsett, 51 Mo. App. 146; Bush v. Fisher, 85 Mo. App. 1; Halliday v. Lesh, 85 Mo. App. 285. Counsel attempts to evade the effect of the rule by claiming that appellant is suing for "special or consequential" damages; in other words, special damages, or profits which it would have made by a re-sale of the mowers in ques-

tion.  One insurmountable objection to this claim of
appellant is that it does not plead any special facts
or circumstances in the amended petition entitling it to
the special damages contended for.  Wilson v. Russer,
91 Mo. App. 275.  (2)  Appellant was not entitled to
recover as its damages the probable profits it might
have realized from a resale of the mowers.  Gill v.
Johnson, 84 Mo. App. 456;  Bush v. Fisher, 85 Mo.
App. 1;  Halliday v. Lesh, 85 Mo. App. 285.  (3)
There was no competent proof whatsoever to sustain
the finding of the referee that appellant would have
received a profit of $1,828.50, or any other definite
amount.  Doyle v. Turpin, 57 Mo. App. 84;  Murphy
v. St. Louis, 8 Mo. App. 483;  Bersch v. Sander, 37
Mo. 104;  Billups v. Daggs, 38 Mo. App. 367;  Bean v.
Miller, 69 Mo. 384.

## OPINION.

### I.

BOND, J.—This cause was appealed to the Kan-
sas City Court of Appeals and transferred to this court
for the reason that the amount involved exceeded the
jurisdiction of that court.

The plaintiff, the Weber Implement Company, a
Missouri corporation located at St. Louis, Missouri,
and doing a jobbing business in farm machinery, on
November 7, 1905, entered into a written
Statement.  contract with defendant, the Acme Harvest-
ing Machine Company, an Illinois corporation, manu-
facturing farm machinery at Peoria, Illinois, whereby
the latter agreed to manufacture certain mowing ma-
chines to be specially branded "Koenig Buckeye,"
and the former agreed to purchase same at specified
prices and dates of delivery during the years of
1906, 1907 and 1908.

By said contract it was agreed that plaintiff
should order one thousand of the above mowers

yearly, which were to be manufactured and ready for shipment not later than May first of each year.

In the clause setting out the manner and time of payment, the plaintiff agreed, upon receipt of a shipment of mowers, to execute notes, without interest before maturity, payable one-third September tenth, one-third October tenth and the final third on November tenth, of each year, and which should be subject to a discount of three per cent for cash, if paid by July first of that year.

Defendant did not manufacture, nor did plaintiff receive, the specified number of mowing machines during the year 1906 and 1907; but there is no controversy here as to the damages growing out of the failure in this regard, for plaintiff limits its demand to a recovery of such damages as it sustained by reason of the failure to manufacture and deliver the one thousand machines covered by the contract for the third year, 1908.

On November 25, 1907, defendant wrote plaintiff, declining to furnish any of the thousand mowers which it had agreed to furnish during 1908, claiming that the contract of November 7, 1905, had been mutually abandoned and a new or modified contract entered into under date of October 12, 1907, and that plaintiff had violated the terms of the latter contract. Plaintiff insisted that the contract of November 7, 1905, had not been abandoned or modified, and instituted this action to recover damages in the sum of $7940, sustained by reason of defendant's failure to manufacture and deliver the thousand mowers during the year 1908.

Plaintiff also alleged in its petition that it had suffered a further loss because of defendant's breach of its contract in being prevented from making profits on the sale of kindred goods which of necessity would have been used with said mowers, including extras,

repairs, fixtures, etc., and which would reasonably have amounted to the sum of $5250.

Defendant's answer contained two counts, the first averring that the contract of November 7, 1905, had been abrogated and a new or modified contract entered into and that plaintiff had violated the latter contract, thereby releasing defendant from any liability. The second count was a counterclaim in which it was alleged the contract of 1905 had been abandoned; that plaintiff had violated the terms of this new contract, and as the result thereof defendant had been damaged in the sum of $15,093. In its last amended answer this counterclaim was abandoned and no evidence was offered in support of it.

By agreement of the parties the cause was referred to Judge Henry C. Timmonds to hear and report on the facts and the law.

The referee thus stated the issues:

"The pleadings admit the execution of the contract of November 7, 1905, but they present the following primary issues:

"1. Was said contract mutually abandoned and a new or modified contract entered into in lieu thereof as alleged in defendant's answer?

"2. Did defendant violate the contract of November 7th, as alleged in plaintiff's petition?"

He then found as a fact:

"That the contract of November 7, 1905, was not mutually abandoned and that no new contract was entered into in lieu thereof.

"That the defendant violated and broke said contract of November 7, 1905."

On the question of damages the referee found that on November 25, 1907, defendant violated its contract by announcing to plaintiff its refusal to deliver any of the thousand mowers in 1908, but that defendant manifested a disposition to assist plaintiff in filling any reasonable orders it might have taken up

to that time, and proposed to furnish the required number of mowers and shipping directions at once. The referee also held that, as a matter of law, it was plaintiff's duty to have accepted this offer, notwithstanding the fact that the contract itself provided that said machines were to be sold on credit. The referee then found the loss at $1828.50, being what plaintiff would have profited on the contemplated resale of two hundred and thirty mowers which defendant's default prevented, and reduced it to the sum of $399.10, the difference being the amount plaintiff could have saved had it accepted defendant's proposition to fill certain orders for cash.

Plaintiff filed its exceptions to the report of the referee, and on the hearing of these exceptions the trial court approved the referee's findings of fact, but disapproved his conclusions of law and rendered judgment in favor of plaintiff for one dollar.

Plaintiff, after unavailing motions for new trial and in arrest of judgment, brings this cause here for review.

II. This being neither an equitable action nor one wherein a reference of the issues would have been compulsory under the statute (Reed v. Young, 248 Mo. l. c. 613, and cases cited), the findings of fact by the referee, if supported by any substantial evidence, are conclusive on appeal. Moreover, the refusal of the respondent (defendant below) to appeal from the judgment of the trial court affirming the verdict of the referee on the issues of fact, closes the door to any re-investigation of the facts at the instance of respondent. This confines the inquiry on the present appeal to the errors assigned by appellant (plaintiff below).

*Findings of Referee.*

Appellant claims that under the issues and proofs, it was entitled to recover: First, for loss of profits of

a probable resale of the whole one thousand mowers which respondent failed to deliver in the year 1908; second, that in any event it was entitled to loss of profits on two hundred and thirty mowers which it had contracted to resell during that year, but was unable to deliver because of respondent's breach of its contract to supply them. These questions will be determined in order.

III. The principle upon which profits prevented by a breach of a contract are recoverable, took root in the case-law of England and America, in a decision

Loss of of 1854 (Hadley v. Baxendale, 9 Exch. l. c. Profits. 353) where it was said:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

Shortly following (1859) in Smeed v. Foord (1 El. & El. l. c. 613, 120 Eng. Rep. Reprint, l. c. 1039), it appeared that a farmer was delayed in threshing his wheat by the failure of the promisor to deliver a threshing machine on a fixed date. In consequence of the delay the stacked wheat was substantially injured by rain. There was a verdict for five hundred pounds. The court (Lord CAMPBELL, Chief Justice) discharged a rule on the plaintiff to show cause why the judgment should not be reduced and affirmed the full recovery for the reason that the case was governed by the ruling of Hadley v. Baxendale, supra, which he said, was "in accordance with the Code Napoleon, with Pothier, with Chancellor Kent and with all other authorities." This observation of Lord

CAMPBELL was quoted by the Supreme Court of Maine (VIRGIN, J.) in Grindle v. Eastern Express, 67 Me. 1. c. 322 et seq., citing the authorities supporting the statement and also adopting the ruling in Hadley v. Baxendale, which has now become the accepted statement of the law in America (8 R. C. L. 455, sec. 25, and cases cited) where it had been previously announced by the learned author of the Commentaries on American Law, in his note to *page 480 (12 Ed.) in the following terms:

"Damages for breaches of contract are only those which are incidental to, and directly caused by, the breach, and may reasonably be supposed to have entered into the contemplation of the parties, and not speculative profits or accidental or consequential losses, or the loss of a fancied good bargain."

This is a perfect legal and logical statement of the principle governing breaches of contract and is a moral imperative in every case embraced within its terms. It was only paraphrased in the case of Hadley v. Baxendale, supra, and limits the reach of redress, on the breach of the contract, to the proximately caused or reasonably contemplated losses and excludes the problematical profits of future bargains. Hence there is no merit in appellant's first assignment of error.

In the matter in hand the contract contemplated resales by the jobbing-purchaser of the products agreed to be manufactured and delivered to it, and for that purpose a fixed time was prescribed within which the articles should be ready for delivery to the purchaser in order that it might turn them over in the performance of agreements for resales to the users of the machines. It was further agreed by the parties that such anticipatory resales by the buyer might be consummated through the delivery of the mowers by a direct shipment from the manufacturing plant in Peoria to the sub-vendees. This and the further fact

that the payments were postponed so as to allow the original purchaser to make them after having made delivery under resales, are sufficient to have apprised respondent of the specific object and purpose of the contract made with it for the supplial of machines of a particular kind. Hence it was impossible for the respondent to have been unaware that the mowers it agreed to manufacture were to be resold by the buyer on the faith of its agreement to manufacture and deliver them to the order and direction of the appellant. Evidently it was in the minds of the parties so contracting that a breach of the promise to deliver on the fixed date would entail a loss on the purchaser of all profits on all resales actually made by it in the meantime, and the learned referee correctly stated the law, on the facts showing a resale of two hundred and thirty mowers made by the appellant in reliance on the agreement of the respondent that a thousand would be delivered on or before May 1, 1908. The facts bring this transaction clearly within the ruling made in Hadley v. Baxendale, supra.

The record shows and the referee found that the net profit which appellant would have received on such resales would have been $1828.50; and in this sum judgment should have been recommended by the referee in favor of appellant.

While admitting that this was the measure of appellant's damages, the referee deducted therefrom an amount by which appellant could have lessened the loss to itself, if it had accepted a *new* contract proffered by respondent when it refused to carry out its original agreement for the year 1908. This was error.

It is the unquestioned law that it is the duty of a party injured by the breach of a contract or by a tort, to take reasonable steps to minimize the loss; but the rule has never been carried, in any well considered case, to the extent of requiring such party to alter its agreement under circumstances like those in

the present case, which disclose that it did not have the pecuniary ability to make the cash payment prescribed by the delinquent party; and under the further circumstances that the article whose delivery was omitted, was not a commodity which could be purchased under its trade name in the marts of the country.

In the final analysis of this transaction, it is clear that the terms of their contract and the conduct of the parties performing it, necessarily informed them the direct consequence of a failure to deliver the "Koenig Buckeye" mowing machines on time, would be the infliction of a loss of whatever profits were realizable on an intervening sale by the buyer. This loss was not lessenable as to this particular product under the facts of this record and the findings of the referee, which were only in fault as to that conclusion.

The judgment is, therefore, reversed and the cause remanded, with directions to the trial court to enter a judgment in favor of the appellant for $1828.-50, being the profits actually prevented by respondent's breach of its contract.

All concur; *Woodson, J.,* in result.