Jerry **FRESHOUR**, Plaintiff-Respondent,

v.

L. A. **SCHUERENBERG**, Defendant-Appellant.

No. 9330.

Missouri Court of Appeals,
Springfield District.

May 4, 1973.

Manuel Drumm, Sikeston, for plaintiff-respondent.

Dwight Crader, Sikeston, for defendant-appellant.

TITUS, Chief Judge.

In 1968 plaintiff and defendant owned equal interests in a Scott County farm. After parting company, plaintiff sued defendant (so the 1969 petition alleged) for half "of the reasonable value of Plaintiff's [1968] services" in leveling part of the land, which task plaintiff assumed "at the express request of Defendant with the understanding this Defendant would pay one-half of the reasonable value of Plaintiff's services, equipment, time and labor."[1] Defendant answered there was no such agreement, but even so, the parties had compromised and settled all their differences in a written February 1969 contract and plaintiff had waived or was estopped to assert his rights, if any, by delaying the leveling issue until after the settlement. Sans a jury, the court nisi determined that plaintiff performed the leveling "by reason of arrangement with the defendant . . . to the benefit of the defendant [that] resulted in the improvement of the land;" also, that "defendant paid the plaintiff [$300] for a portion of the work," and that the "fair and reasonable amount due the plaintiff for his services was $1,668.91 . . . leaving a balance due the plaintiff of $1,368.91." Judgment was

---

1. Whether plaintiff declares on an express contract or upon quantum meruit need not be decided. When the nature of the declaration cannot be determined with definiteness, a plaintiff will be permitted to recover upon whichever of the two theories his evidence warrants. Johnson v. Estate of Girvin, 414 S.W.2d 245, 248 (Mo. banc 1967); Edmonds v. Stratton, 457 S.W.2d 228, 231 [3] (Mo.App. 1970).

entered accordingly and defendant appealed.

■ Albeit our duty in court-tried cases to review the case both upon the law and the evidence [Rule 73.01(d), V.A.M.R.], that duty is restricted to reviewing only those specific matters properly urged by the appellant. Del Monte Corp. v. Stark & Son Wholesale, Inc., 474 S.W.2d 854, 857 [2] (Mo.App.1971); Buxton v. Horn, 452 S.W.2d 250, 251 [1] (Mo.App. 1970). We have no duty, sua sponte or otherwise, to ascertain what result would have been reached had we been ensconced as the initial fact trier [First Nat. Bank v. Farmers New World Life Ins. Co., 455 S. W.2d 517, 521 [1] (Mo.App.1970)], for "we are obliged to accept as true the evidence and all permissible inferences therefrom favorable to the prevailing party and disregard such testimony as is contrary thereto." Dill v. Poindexter Tile Company, 451 S.W.2d 365, 371 [7] (Mo.App. 1970). In addition, we are admonished that the appealed-from judgment is not to be set aside unless clearly erroneous, that when the testimony, as here, conflicts substantially, we should give due deference to the trial court's conclusions [Nutz v. Shepherd, 490 S.W.2d 366, 369 [2] (Mo.App. 1973)] and its better opportunity to judge of the credibility of the witnesses [Mission Insurance Company v. Ward, 487 S.W.2d 449, 451 [3] (Mo. banc 1972)], and that the trial judge has leave to disbelieve all of the testimony of any witness [Southwestern Bell Tel. Co. v. Crown Insurance Co., 416 S.W.2d 705, 711 [6] (Mo.App.1967)] or to believe part of a witness' testimony and reject the rest. North Side Finance Co. v. Sparr, 78 S.W.2d 892, 894 [4] (Mo. App.1935).

■ But enough of battologizing—what does defendant claim? He says the trial court erroneously found for plaintiff because "there was no express or implied contract" and plaintiff "waived his claim for land leveling by not formally including the claim in the written agreement and by subsequent acts."[2] We properly may not classify such utterances other than mere abstractions which short the commandments of Rule 84.04(d). Harbaugh v. Harbaugh, 472 S.W.2d 449, 450 [1] (Mo. App.1971). They do not purport to explain "why" there was no contract. Neither does defendant undertake to enlighten us as to "why" subsequent acts (whatever they might be) or plaintiff's failure to formally include his claim in a written contract (whatever that might be) constituted a waiver nor "why" plaintiff was required (if indeed he was) to include his claim in the contract. Nakedly stating what the alleged errors are without elucidating "why" they are errors neither satisfies the rule nor preserves anything for review. Chambers v. Kansas City, 446 S.W.2d 833, 841 [14] (Mo.1969); Moll v. Springdale Park, Inc., 395 S.W.2d 126, 128 [1] (Mo.1965). In short, "why" there was a waiver and "why" there was no contract, if indeed there was a waiver and no contract, is left for us to ponder. And as if enough on the subject has not been said already, we add that Rule 84.04(d) is applied in appellate review of court-tried cases with the same force as in the other kind. Boyd v. Boyd, 459 S.W.2d 8, 12 [9] (Mo.App.1970). Nonetheless, and despite our justification to dispatch defendant's appeal at this juncture for failure to abide with Rule 84.-04(d), we gratuitously (though reluctantly and most summarily) consider what we envision defendant meant by his points lest he claim his appellate lance was allowed to tilt with only vanes of a technical windmill.

Depending on whether plaintiff's or defendant's recountings are accepted (for they were the only two present at any per-

---

2. To the first point, defendant refers us to Appeal & Error ☞1008(2) in 3A Missouri Digest; 32 Missouri Digest, Words and Phrases; and to 17 C.J.S. Contracts §§ 3 and 39. To the second point, defendant directs us to 15A C.J.S. Compromise & Settlement § 27 and to footnote 42 on page 343 of 12 Corpus Juris, which alludes to Lowe v. Marlow, 4 Ill. App. 420 (1879) and East Tennessee, etc., R. Co. v. McKnight, 15 Lea (83 Tenn.) 336 (1885).

tinent time), a land leveling agreement as averred, supra, either existed or it did not. Plaintiff insisted that in the Spring of 1968 after defendant acquired an interest in the farm, they several times discussed leveling part of the land and, although in the initial stages the particulars as to cost, et cetera, were unknown, "[w]e agreed to level it." Through plaintiff's arrangements, two tracts were surveyed by the Soil Conservation Service—only one survey was eventually used. The surveys "show you the whole design for grading . . . and balancing your dirt and how much is to be moved to accomplish this design and what your grade will be after it is finished." Subsequent to obtaining the surveys, plaintiff tried to contact defendant without success but decided, nevertheless, "to go ahead and start and I contacted him . . . that night on the phone and told him what I was doing." A day or two after the leveling was underway, defendant met plaintiff in the farm field where the work was being done. Plaintiff's version is that they "went over the figure, the design [survey], the yardage and the price" and defendant said "he would pay one-half of this fee that we agreed on, eighteen cents a yard on eighteen thousand five hundred and forty yards plus planing and correction work." Plaintiff also related that he "offered to go until July without payment provided he could help me out with some of the expenses . . . and he gave me a check for three hundred dollars right there in the field and said that he would contact his brother . . . about getting a culvert . . . so we could drain our tail water out into a drainage ditch." To the contrary, defendant asseverated he advised plaintiff he was "not interested in leveling the farm," that he had not seen the cut sheet (survey) until it was produced in court on the day of trial, and that when he gave defendant his $300 check it was accompanied by the admonition that "if you go any further you are on your own because I don't intend to spend no money on this. Leveling is just not practical and it is going to cost too much money."

Indeed, as defendant reminds us, a contract consists of an offer and an acceptance, or, in other words, a meeting of the minds. Helmkamp v. American Family Mutual Insurance Co., 407 S.W.2d 559, 568 [15] (Mo.App.1966). But opposed to defendant's demand for exactness is the established rule that "a contractual relationship may arise without written or oral offer and acceptance, and does arise where the circumstances and acts and conduct of the parties support a reasonable inference of a mutual understanding and agreement that one party perform and that the other party compensate for such performance." Kosher Zion Sausage Co. of Chicago v. Roodman's, Inc., 442 S.W.2d 543, 546 [2], (Mo.App.1969). This principle can well be applied to this case, for although a formal offer and a formal acceptance may not have been spoken, we cannot say it was clearly erroneous for the court to conclude that a contractual obligation arose by necessary implication from the course of conduct evidenced by the parties. Nor do we agree with defendant that the trial court's employment of the word "arrangement" dilutes its obvious finding that a contract or agreement existed. While it is true that " 'arrangement' " when taken out of context has a different signification from the words "contract" or "agreement" (17 C.J. S. Contracts § 1(1), at p. 539), yet when taken in connection with the other findings of the court, "arrangement" could mean nothing less than that by some mutual agreement between the parties plaintiff was to perform leveling services and defendant was to pay one-half the cost thereof. Boyle v. Great Northern Ry. Co., 13 Wash. 383, 43 P. 344, 345 (1896).

Defendant's second point, we assume, relates to the February 1969 written agreement "signed by the parties." This writing (an exhibit in the cause) dealt specifically with four enumerated

matters, i.e., (1) defendant's payment of principal and interest on a note secured by a deed of trust to the farm, (2) plaintiff's obligation on a note secured by a second deed of trust, (3) defendant's indebtedness to plaintiff for fertilizer and chemicals, and (4) defendant's payment of real estate taxes. The agreement specified how these specific matters would be adjusted through a sale of the farm and otherwise. Nothing of defendant's obligation to plaintiff on the land leveling "arrangement" was contained in the agreement. Plaintiff testified that he "mentioned" the land leveling indebtedness of defendant at the time the agreement was executed and that he would not have signed the agreement had it purported to settle that account. Plaintiff also denied, as defendant later testified, that he had ever suggested that we "just forget all about" the land leveling. The argument portion of defendant's brief apropos the second point tracks along the path that a settlement which recites it is in full satisfaction of all claims and demands between the parties as to all related prior disputes between them also includes claims not specifically mentioned where it appears that the parties intended to embrace all matters of difference between themselves. 15A C. J.S. Compromise & Settlement § 27, at pp. 238–239. We cannot dispute this generality although we can say it is not germane here because nowhere in the agreement is it recited that the writing is in full settlement of all the disputes or accounts of the parties. In construing and deciding the effects of a valid settlement and compromise, the court's primary aim is to effect the intention of the parties (15 Am.Jur.2d Compromise and Settlement § 20, at p. 954), and a compromise settlement or agreement is conclusive as to only those matters which the parties have intended to include within its terms. Meyers v. Meyers, 210 Ark. 714, 197 S.W.2d 477, 480 [1] (1946); 15A C.J. S. Compromise & Settlement § 27, at pp. 235–236. Whether there was actually a contract vel non constituting a complete and final settlement of all existing claims between plaintiff and defendant not specif-

ically recited in the agreement, was a question of fact for determination by the trial court [California Milling Corporation v. White, 229 Cal.App.2d 469, 40 Cal.Rptr. 301, 308 [9] (1964)], and in view of the silence of the agreement to proclaim it a full determination of all existing claims and accounts, coupled with the accompanying evidence as to intention, we cannot say the trial judge clearly erred in holding as he did.

The judgment is affirmed.

STONE, HOGAN and BILLINGS, JJ., concur.