John GUIDRY, Simul–Vision Cable Systems, Ltd., and Guidry Cable Vision Management Company, Respondents/Cross–Appellants,

v.

CHARTER COMMUNICATIONS, INC., Charter Communications Ent. 1, LLC, Baumann Property Co., U.B.S. Realty Investors, LLC, Defendants,

and

Seven Trails West, LLC, Appellant/Cross– Respondent.

No. ED 88538.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 7, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 13, 2008.

Application for Transfer Denied Dec. 16, 2008.

Michael Clithero, St. Louis, MO, for appellant.

Joann Sandifer, Clayton, MO, for defendants.

Anthony Simon, St. Louis, MO, for respondents.

NANNETTE A. BAKER, Chief Judge.

### Introduction

Seven Trails West LLC ("Seven Trails") appeals from a judgment of the Circuit Court of the City of St. Louis entered on a jury verdict awarding John Guidry, Simul–Vision Cable Systems, Ltd. and Guidry Cable Vision Management Co. (collectively, "Simul–Vision") $706,000 in damages. Simul–Vision cross-appeals a judgment from the same court granting summary judgment in favor of Charter Communications Enterprises LLC ("Charter").[1] We affirm in part and reverse and remand in part.[2]

### Factual and Procedural Background

On January 12, 1984, Simul–Vision and Seven Trails West, LP ("West LP") entered into a written contract ("1984 Contract") for cable service to the tenants of Seven Trails West Apartment Complex ("the apartment complex"). The initial term of the contract was 15 years, expiring on January 11, 1999. This contract contained an automatic renewal provision which stated:

> this agreement and all of its terms shall automatically renew for successive periods of five (5) years each unless either party delivers written notice to the other party at least 90 days prior to the end of the initial or any one of the successive five (5) year terms of that party's intention not to renew the Agreement.

Under the terms of this contract, West LP was prohibited from allowing third parties to install or operate a cable or satellite system at the apartment complex (the Exclusivity Provision). The contract also provided that during the first five years Simul–Vision would pay West LP

---

1. We consolidated the two appeals, which were originally filed separately.

2. Charter's motion to dismiss this appeal for lack of a final judgment, taken with the case, is denied.

ten percent of all subscription fees generated from the apartment complex. This payment increased to 15 percent during the second five years, and 20 percent for the last five years.

On September 13, 1984, West LP sold the apartment complex to Seven Trails West Associates (West Associates). West Associates owned the property until 1999, and during this time, Camden Development, Inc, managed the apartment complex.

On May 8, 1998, eight months before the contract term expired, Camden Development sent a letter (Camden letter) to Simul–Vision, which stated:

> The Cable Television Agreement for the Seven Trails West Apartments, dated January 12, 1984 ... will expire on January 12, 1999. Pursuant to Section X, Paragraph 10.01, Camden Development, Inc. is providing its "at least ninety (90) days notice" of intent to not renew the Agreement for five (5) years. Camden further requests that the Agreement be placed on a month to month basis effective immediately upon termination.

Simul–Vision did not reply to the Camden letter.

On August 11, 1998, five months before the term expired, West Associates sent a certified letter to Simul–Vision which stated West Associates "hereby elects to not renew said Agreement; therefore, said Agreement shall terminate on January 11, 1999." Simul–Vision did not respond. After the 15 year term expired, Simul–Vision continued to provide cable service to the apartment complex and pay West Associates a percentage of the subscription fees.

In August 1999, West Associates sold the apartment complex to Seven Trails.[3] After Seven Trails purchased the apartment complex, Simul–Vision continued to provide cable service. Simul–Vision paid Seven Trails a smaller percentage of the subscription fees than was required under the 1984 Contract. Beginning in March 2001, Simul–Vision stopped making payments to Seven Trails.

In October 1999, Seven Trails approached Charter and other cable and satellite television service providers about providing cable services to the apartment complex. Seven Trails invited Charter to bid on the right to provide cable service to the apartment complex. Charter inquired about the contractual status of the current provider and was informed that Seven Trails had a month-to-month arrangement with Simul–Vision, which was terminable with a thirty-day notice. Charter bid on the right to provide cable services, negotiated and eventually signed a "right of entry" contract with Seven Trails in March of 2001. Charter began installing its cable equipment in July 2001.

During August 2001, Seven Trails and Simul–Vision exchanged several letters, in which Simul–Vision accused Seven Trails of violating the Exclusivity Provision in the 1984 Contract by allowing Charter to begin the installation of its cable system. Seven Trails, on the other hand, maintained that the Exclusivity Provision did not apply because the cable service was on a month-to-month arrangement

On August 27, 2001, Seven Trails terminated the month-to-month arrangement effective on September 30, 2001. Charter began providing cable services to the apartment complex in October 2001.[4]

---

3. West Associates entered into the Purchase and Sale Agreement on May 12, 1999. The Purchase and Sale Agreement was amended on July 2, 1999 and again on August 23, 1999.

4. Between October, 2001 and January, 2002, both Charter and Simul–Vision were providing services to the residents of the apartment complex.

Simul–Vision filed a five-count petition in the circuit court of the City of St. Louis.[5] However, we need only discuss the first two counts as they are the only two relevant on appeal. Count I alleged a breach of contract claim against Seven Trails. Count II alleged a tortious interference claim against Charter and was disposed of through summary judgment.

Seven Trails also filed a two count counterclaim. In its first count, a declaratory judgment action, Seven Trails asked the court to find that 1984 Contract was terminated and was not renewed, and that Simul–Vision continued to provide cable service on a month-to-month agreement. Count II, pled in the alternative, alleged Simul–Vision breached the contract between the parties by failing to pay the entire 20 percent of the subscription fees.

The case was tried before a jury. Seven Trails moved for a directed verdict at the close of Simul–Vision's case and again at the close of all evidence. The trial court denied both motions. The jury found in favor of Simul–Vision on Count I, awarding $706,000.00 in damages. It found in favor of Seven Trails on its counter-claim, awarding it $46,000.00 in damages.[6]

Seven Trails appeals the judgment of the trial court on Count I and Simul–Vision cross-appeals the grant of summary judgment on Count II.

### Discussion

#### Breach of Contract

Seven Trails raises five points on appeal. The first three points contend that the trial court erred in submitting the case to the jury for the following reasons: (1)

Simul–Vision failed to establish the existence of the Exclusivity Provision because the statute of frauds precludes enforcement and because the evidence at trial negated the existence of an agreement on that provision. (2) Simul–Vision is not entitled to enforce the contract because it was the first party to breach and the trial court erred in refusing to instruct the jury on the first to breach rule. (3) Simul–Vision suffered no identifiable damages. In its fourth point, Seven Trails argues that trial court improperly instructed the jury by failing to give a limiting instruction regarding entitlement to benefits of a month-to-month contract and that jury verdict was plainly excessive and should be remitted. The fifth point on appeal is that the trial court erred in admitting evidence related to damages.

#### Statute of Frauds

■ In its first point on appeal, Seven Trails argues that the statute of frauds precludes enforcement of the Exclusivity Provision. Seven Trails claims that the absence of a writing is fatal to Simul–Vision's breach of contract claim because the contract Simul–Vision seeks to enforce was "[for an interest in land] for a longer time than one year." We cannot consider this issue however, because Supreme Court Rule 55.08 precludes Seven Trails from asserting statute of frauds as an affirmative defense where it failed to take the opportunity to do so in its answer.

■ Rule 55.08 states in relevant part: "[i]n pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances, including ... *statute of frauds* ... and any other mat-

---

**5.** Plaintiff's petition was against Seven Trails, Charter, UBS Realty Investors, who had managed the Apartment Complex and Baumann Property Company, Inc. who had also managed the Apartment Complex. As the present appeal does not involve Baumann and UBS, we will not discuss Simul–Vision's claims against them.

**6.** Simul–Vision did not appeal this award.

ter constituting an avoidance or affirmative defense." Rule 55.08. When a defendant fails to plead such a defense, it is considered generally waived. *Holdener v. Fieser,* 971 S.W.2d 946, 950 (Mo.App. E.D. 1998). This rule applies unless: "(1) the plaintiff either impliedly or expressly consented to trying the case on that defense, or (2) the trial court permitted the pleadings to be amended to include the defense." Rule 55.33(b); *Lucas v. Enkvetchakul,* 812 S.W.2d 256, 263 (Mo.App. S.D. 1991).

Seven Trails did not plead the statute of frauds as an affirmative defense in its answer and has not given us any indication that it brought the issue to the trial court's attention at any point during the proceeding before the trial court. See *Barr v. Snyder,* 294 S.W.2d 4, 10 (Mo.1956). On the face of the record before us, Seven Trails has waived any statute of frauds defense it may have had. See *Id.*

### Substantial Evidence of Agreement

■ We now turn to Seven Trails second argument under its first point: whether the trial court erred when it denied Seven Trails' motion for directed verdict because Simul–Vision failed to present sufficient evidence that Seven Trails agreed to be bound by the Exclusivity Provision. When reviewing a motion for a directed verdict and a judgment notwithstanding the verdict, the court must determine whether the plaintiff made a submissible case. *Hodges v. City of St. Louis,* 217 S.W.3d 278, 279–80 (Mo. banc 2007). A case can be submitted only if "each and every fact essential to liability is predicated upon legal and substantial evidence." *Dhyne v. State Farm Fire and Cas. Co.,* 188 S.W.3d 454, 456 (Mo. banc 2006). Evidence is insufficient and we will reverse when there is "a complete absence of probative fact" to support the verdict. *Id.* at 457. In determining whether the plaintiff

has made a submissible case, we will view the evidence in the light most favorable to the verdict, giving the plaintiff the benefits of all reasonable inferences from the verdict, and disregarding unfavorable evidence. *Hodges,* 217 S.W.3d at 280. A directed verdict is inappropriate "unless reasonable minds could only find in favor of the defendants." *Holtmeier v. Dayani,* 862 S.W.2d 391, 395 (Mo.App. E.D.1993). We will review *de novo* questions of law. *Hodges,* 217 S.W.3d at 280.

■ In a breach of contract action, a submissible case includes the following essential facts: (1) a contract between the plaintiff and the defendant exists; (2) the plaintiff had rights and the defendant had obligations under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages. *Howe v. ALD Services, Inc.,* 941 S.W.2d 645, 650 (Mo. App. E.D.1997). Jury instruction number 7 incorporates these essential facts; it states:

> Your verdict must be for the plaintiffs on the Breach of Contract claim against defendant Seven Trails West, L.L.C. if you believe:
>
> First, plaintiffs and defendant entered into a month to month agreement which included terms of the 1984 written agreement, whereby plaintiffs agreed to fabricate, install, own, maintain and operate a [cable] system at Seven Trails Apartment Complex and defendant Seven Trails West, L.L.C. agreed to refuse to grant permission to third parties for the installation or operation within the complex of any cable or other satellite television systems, and,
>
> Second, plaintiffs performed their agreement, and
>
> Third, defendant failed to perform its agreement, and

Fourth, plaintiffs were thereby damaged.

According to the instruction, Simul–Vision needed to present substantial evidence that: (1) the parties had a month-to-month agreement which included the terms of the 1984 Contract; (2) Simul–Vision maintained and operated a cable system at the apartment complex; and (3) Seven Trails agreed to be bound by the Exclusivity Provision in the 1984 Contract. In our review of the evidence, we find that Simul–Vision presented sufficient evidence that the parties had a month-to-month agreement, that Simul–Vision provided cable service to the apartment complex, and that Seven Trails agreed to be bound by the Exclusivity Provision.

The month-to-month agreement, however, was not simply a continuation of the 1984 Contract, which in fact, terminated. Neither party disputes the facts leading up to the expiration of the 15 year term, and therefore, the issue of whether the 1984 Contract continued to be in effect after the original term is a question of law which we will review *de novo*.

■ The cardinal rule of contract interpretation is to ascertain the intention of the parties and to give effect to that intention. *Atlas Reserve Temporaries, Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. App. W.D.2001). Under the terms of the 1984 Contract, the contract would automatically renew unless either party "delivers written notice to the other party at least 90 days prior" to the end of the current term. The undisputed facts show that West Associates sent two letters, both of which informed Simul–Vision of its intention not to renew the contract. The Camden letter specifically stated that it was giving 90 days notice of its intention not to renew. The August 11, 1998 letter unequivocally stated that West Associates was not renewing the 1984 Contract and that it would terminate on January 11, 1999.

■ Upon our review of the record, we find that the Camden letter proposed a modification of the 1984 agreement by changing one of its terms. When the parties modify an existing contract they are making a new contract; it is only enforceable if there is mutual assent and consideration. *MECO Systems v. Dancing Bear Entm't*, 42 S.W.3d 794, 803 (Mo.App. S.D. 2001). We will look to the parties "*objective* manifestations of intent to determine whether there was a 'meeting of the minds.'" *Don King Equipment Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 365 (Mo.App. S.D.2003). A contract will not be formed on the basis of an individual's subjective belief. *Silver Dollar City, Inc., v. Kitsmiller Const. Co., Inc.*, 931 S.W.2d 909, 914 (Mo.App. S.D. 1996). A meeting of minds occurs when there is a definite offer and an unequivocal acceptance. *Cottonseed Delinting Corporation v. Roberts Brothers, Inc.*, 218 S.W.2d 592, 594 (Mo.1949). An offer not supported by consideration is revocable until it is accepted. *Hendricks v. Behee*, 786 S.W.2d 610, 612 (Mo.App. S.D.1990).

■ In this case, the Camden letter was West Associates' definite offer to place the agreement on a month-to-month basis. Simul–Vision never communicated its acceptance to West Associates. Simul–Vision failed to provide an objective manifestation of its intent because it failed to respond to the Camden letter. Silence generally cannot be translated into acceptance. See *Karsch v. Carr*, 807 S.W.2d 96, 99 (Mo.App. E.D.1990). The offer was then revoked by the August 11, 1998 letter which specifically stated it was terminating "the Agreement" between the parties.

■ As a matter of law, we find that the 1984 Contract and all of its terms

terminated on January 11, 1999. Although the 1984 Contract terminated, the parties continued to behave as they had before it was terminated: Simul–Vision continued to provide cable service to the apartment complex and Seven Trails continued to receive monthly payments from Simul–Vision. A contractual relationship may arise without the formalities of offer and acceptance. *Freshour v. Schuerenberg,* 495 S.W.2d 116, 119 (Mo.App.1973). The parties' actions must support a reasonable inference of mutual understanding and agreement that one party perform and the other party compensate for such performance. *Kosher Zion Sausage Company of Chicago v. Roodman's Inc.,* 442 S.W.2d 543 (Mo.App.1969). The parties' course of conduct may lead to the necessary implication that a contractual obligation exists. See *Freshour,* 495 S.W.2d at 119. In the case at bar, the parties' actions support a reasonable inference of mutual understanding and agreement. Simul–Vision paid a percentage of its subscription fees to Seven Trails in exchange for Simul–Vision's right to place their cable lines at the apartment complex and provide cable service to Seven Trails' tenants.

 If both parties mutually agreed to the Exclusivity Provision after the 1984 Contract terminated, Seven Trails would be bound. See *L.B. v. State Committee of Psychologists,* 912 S.W.2d 611, 617 (Mo. App. W.D.1995). Seven Trails argues that it never agreed to the Exclusivity Provision and that Simul–Vision's evidence of a mutual agreement was insufficient. We disagree. Simul–Vision presented sufficient evidence that the Exclusivity Provision was a term to which both parties mutually agreed. All essential terms of a contract must be mutually agreed upon by both parties. *Arrowhead Contracting, Inc., v. M.H. Washington, L.L.C.,* 243 S.W.3d 532, 535 (Mo.App.W.D.2008).

Simul–Vision relies on the Camden letter, which offered to place the 1984 Contract on a month-to-month basis, and the August 24, 2001 letter in arguing that it presented sufficient evidence to submit the case to the jury. At trial, John Guidry, an owner of Simul–Vision, testified that he received the Camden letter and that he understood Seven Trails did not wish to continue the contract for another five year term. He also testified that he believed the entire 1984 Contract, including the Exclusivity Provision, was being placed on a month-to-month basis. He further testified that he received the August 11, 1998 letter, but continued to operate under the terms of the 1984 Contract because he believed that letter was terminating the 1984 Contract, not the month-to-month arrangement.

Simul–Vision also presented testimony of Lewis Levey, the owner of West Associates. Levey testified that when he sold the property to Seven Trails, he listed Simul–Vision's cable service as a contract affecting the apartment complex. Levey also testified that, while West Associates owned the apartment complex, he would look to the 1984 Contract to determine the terms of the agreement between Simul–Vision and West Associates. West Associates owned the apartment for seven months after the 1984 contract expired.

The letters exchanged between Simul–Vision and Seven Trails also provide some evidence that Seven Trails and Simul–Vision may have had a "meeting of the minds" regarding the Exclusivity Provision. First, Simul–Vision argues that the Camden Letter is some evidence that the parties intended the 1984 Contract terms govern the month-to-month agreement. West Associates' offer to place "the Agreement" on a month-to-month basis in the Camden letter included the Exclusivity Provision. Second, an August 24, 2001

letter from Seven Trails is evidence that Seven Trails independently agreed to abide by the Exclusivity Provision. The letter states:

> "the owner of the property is fully prepared to permit your client to have the benefit of the 'exclusivity' provision. . . . Of course, the exclusivity provision cannot be read to prevent the installation of cable wiring at the property or to the otherwise prevent the owner from taking such steps as may be necessary to assure continued cable television access for the apartment residents."

The only exclusivity provision in the record before us is the Exclusivity Provision embedded in the 1984 Agreement and at issue in this appeal. In this letter, Counsel for Seven Trails could only have been referring to the Exclusivity Provision of the 1984 Agreement.

In looking at the record in the light most favorable to the verdict, we cannot say there is a complete "absence of probative fact" to support the verdict. After disregarding the unfavorable evidence, we find that Simul–Vision presented a submissible case. For the forgoing reasons, Point I is hereby denied.

### First to Breach

In its second point, Seven Trails claims the trial court erred in refusing to enter judgment in its favor and submitting Count I to the jury because Simul–Vision was the first to breach the agreement and as such was not entitled to enforcement. Specifically, it argues that the court failed to properly instruct the jury on the "first to breach" rule.

Seven Trails claims that Simul–Vision first breached the agreement it seeks to enforce by remitting to Seven Trails less than 20 percent of its subscription fees as required under the payment arrangement of the 1984 Contract. Between August 1999 and February 2001, Simul–Vision paid to Seven Trails approximately 7 1/2 percent of all subscription fees generated from the apartment complex. Simul–Vision stopped honoring the payment arrangement altogether in February 2001. Seven Trails argues that both the payment of less than 20 percent and cessation of payment constitute breach on the part of Simul–Vision, which precludes them from enforcing the Exclusivity Provision of the 1984 Contract. Plaintiff responds that Seven Trails was the first to breach the month-to-month agreement by contracting with Charter in March of 2001, the month in which Simul–Vision stopped making payments altogether, while the month-to-month agreement was still in force. Simul–Vision also claims that even if it breached the month-to-month agreement first, its breach was not material enough to trigger application of the "first to breach" rule.[7]

In refusing to grant Seven Trails' summary judgment on the issue of Simul–Vision's breach of the agreement, the trial court found that there was a material issue of fact regarding whether and what payments were actually owed under the contract. The trial court refused to submit Seven Trails' proffered instructions on the issue of "first to breach." Seven Trails

---

7. As a preliminary issue, we note that the "first to breach" rule is an affirmative defense, as admitted by Seven Trails, which should have been pled in Seven Trails' answer. Rule 55.08; *Semo Grain Co. v. Oliver Farms, Inc.*, 530 S.W.2d 256, 258 (Mo.App. 1975) (*Holding* that matters seeking avoidance of a valid contract are affirmative defenses which must be set out in the pleadings). However, because Seven Trails pled Plaintiff's breach as a counterclaim, the trial court was permitted to treat the counterclaim as if it had been pleaded as an affirmative defense. Rule 55.08.

moved for a directed verdict on this issue, which the trial court denied.[8]

"A party cannot claim the benefit of a contract that it was the first to breach, but this rule applies only when the breach is material." *KC Excavating and Grading, Inc. v. Crane Const. Co.*, 141 S.W.3d 401, 405 (Mo.App. W.D.2004). "Whether a breach is material or immaterial is a question of fact." *Classic Kitchens & Interiors v. Johnson*, 110 S.W.3d 412, 417 (Mo.App. S.D.2003). "Generally, an innocent party may waive a breach of contract by words or conduct. A waiver is an intentional relinquishment of a known right. To rise to the level of waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible." *Austin v. Pickett*, 87 S.W.3d 343, 348 (Mo.App. W.D.2002) (internal citations omitted); Rest.2d of Contracts, Section 246.[9] To determine which party was first to breach and whether Seven Trails waived any alleged breach by Simul–Vision, we must look at the totality of the circumstances. See *Harris v. Desisto*, 932 S.W.2d 435, 446 (Mo.App. W.D. 1996).

In the case at bar, Seven Trails proposed that the court instruct the jury that their "verdict must be for Seven Trails West LLC on Plaintiff's claim of breach of contract in the event you believe Plaintiff breached the arrangement by failing to pay the percent of revenue amounts due and owing under the month-to-month arrangement." The court refused to submit this instruction to the jury because it was a non-MAI instruction and it did not fairly submit "the ultimate issues, fact issues, that this jury needs to decide." We agree.

First, in order to invoke the "first to breach" rule, Missouri substantive law requires not only that a party was first to breach, but also that the breach was material. See *KC Excavating and Grading, Inc.*, 141 S.W.3d at 405. Seven Trails' proposed instruction falls short in both regards. The proposed instruction only required the jury to find that Simul–Vision breached the agreement by not making certain required payments. It did not require a finding that Simul–Vision breached first or that Simul–Vision's breach was material. The proposed instruction would have misinformed the jury on what the law is and the trial court did not abuse its discretion in refusing to submit it to the jury.

Second, even if the proposed instruction had required the jury to find that Simul–Vision was the first to breach and that its breach was substantial, the trial court did not err in refusing to submit the instruction because Seven Trails waived Simul–Vision's breach by continuously accepting less than twenty percent of Simul–Vision's subscription fees over a period of 18 months with full knowledge that Simul–Vision was not fulfilling its obligations under the payment arrangement. *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo.App. 1977) (Holding that one who waives a breach of the contract cannot set it up in justification of his own breach).

---

8. It is important to note here that Seven Trails asserted the breach of the payment arrangement as a counterclaim and was awarded $46,000.00 in damages.

9. "Except as stated in Subsection (2), an obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to know of the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence, under the rules stated in Section 84." *Restatement (Second) of Contracts, Section 246* (1981).

Seven Trails could seek damages for Simul–Vision's breach as it did in this case. However, Seven Trails could not interpose the same breach as an affirmative defense to defeat Simul–Vision's breach of contract claim. See *Restatement (Second) of Contracts, Section 246* (1981), comment c, illustration 3; *Long,* 557 S.W.2d at 915. There was no evidence to support instructing the jury on the issue of "first to breach" as an affirmative defense and the trial court did not err in refusing to submit Seven Trails' proffered instruction. Point III is denied.

### Damages

In its third point, Seven Trails contends that because Simul–Vision did not suffer identifiable damages, it could not make a submissible case for breach of contract and the trial court erred in denying its motion for directed verdict. When we review the trial court's denial of a motion for directed verdict, our review is limited to determining whether the plaintiff made a submissible case. *Harrell v. Mercy Health Services Corp.* 229 S.W.3d 614, 618 (Mo.App. S.D. 2007). As stated above, we will view the evidence in the light most favorable to the verdict. *Hodges v. City of St. Louis,* 217 S.W.3d 278, 280 (Mo. Banc 2007).

■■■ Damages may be measured by loss of profits. *Harvey v. Timber Resources, Inc.,* 37 S.W.3d 814, 818 (Mo.App. E.D.2001). They may also be measured by the loss of the benefit of the bargain. *Morehouse v. Behlmann Pontiac–GMC Truck Service, Inc.,* 31 S.W.3d 55, 62 (Mo. App. E.D.2000). The goal in awarding damages is to put the non-breaching party in the same position as if the contract would have been performed. *Gee v. Payne,* 939 S.W.2d 383, 385 (Mo.App. W.D. 1997). The facts and circumstances of each case dictate which measure of damages is appropriate. *Id.* at 385. The proper measure of damages is a question

of law. *Birdsong v. Bydalek,* 953 S.W.2d 103, 116 (Mo.App. S.D.1997).

Seven Trails claims Simul–Vision failed to present substantial evidence of damages because Simul–Vision did not lose any profits and did not suffer damages because they continued to provide cable services and receive subscription fees past the termination of the month-to-month agreement. Simul–Vision, on the other hand, argues that it was seeking the loss of the value of its cable system as a result of Seven Trails' breach and not the loss of revenues.

■■■ In our review of the record, we find that Simul–Vision presented substantial evidence of damages as measured by the loss of the benefit of the bargain. According to Simul–Vision, Seven Trails prevented Simul–Vision from reselling the cable system at the apartment complex by allowing Charter to install its equipment. Simul–Vision presented evidence that it had contemplated selling the cable system when it entered into the 1984 Contract and included the Exclusivity Provision to protect its investment. This evidence is sufficient and we find the trial court did not err in submitting the case to the jury. Point III is denied

### Speculative Damages

In its fourth point, Seven Trails argues that the trial court erred by improperly instructing the jury on the issue of damages by using unmodified M.A.I. 4.01. Seven Trails failed to object to this instruction at the instruction conference and may not raise it on appeal. See Mo. Sup. Ct. R. 70.03. Seven Trails also argues that the jury verdict was plainly excessive and that it should have been remitted.

■■■ It is well established that competent and substantial evidence is required to support an award of damages. *City of*

*St. Louis v. Riverside Waste Mgmt., L.L.C.,* 73 S.W.3d 794, 805 (Mo.App. E.D. 2002). "An appellate court will reverse a judgment that awards damages for breach of contract if the record shows an absence of proof of actual facts that present a basis for a rational estimate of damages without resort to speculation." *Central America Health Sciences University, Belize Medical College v. Norouzian,* 236 S.W.3d 69, 85 (Mo.App. W.D.2007). On appeal, we can act only when excessiveness appears as a matter of law. *Blond v. Overesch,* 527 S.W.2d 663, 672 (Mo.App.1975). "In an action for breach of contract, a plaintiff may recover the benefit of his or her bargain as well as damages naturally and proximately caused by the breach and damages that could have been reasonably contemplated by the defendant at the time of the agreement." *Birdsong v. Bydalek,* 953 S.W.2d 103, 116 (Mo.App. S.D.1997) (internal citations omitted). Damages in this sense are "only those which are incidental to, and directly caused by, the breach, and may reasonably be supposed to have entered into the contemplation of the parties, and not speculative profits or accidental or consequential losses, or the loss of a fancied good bargain." *Weber Implement Co. v. Acme Harvesting Mach. Co.,* 268 Mo. 363, 371, 187 S.W. 874 (Mo. 1916). This principle "limits the reach of redress, on the breach of the contract, to the proximately caused or reasonably contemplated losses and excludes the problematical profits of future bargains." *Id.* Most importantly, the law cannot elevate the non-breaching party to a better position than she would have enjoyed had the contract been completed on both sides. *Smith ex rel. Stephan v. AF & L Ins. Co.,* 147 S.W.3d 767, 779–80 (Mo.App. E.D. 2004).

Here, the jury found that Simul–Vision had been damaged in the sum of $706,000.00 representing what a potential buyer would have paid to acquire Simul–Vision's system at the apartment complex. We, however, find that the jury award is speculative because it is not supported by the adduced evidence.

When Seven Trails breached the month-to-month agreement with Simul–Vision, all Simul–Vision had or could reasonably expect was the exclusive right to provide cable service to the apartment complex on a month-to-month basis with a thirty-day notice of termination. Had Seven Trails properly terminated the month-to-month agreement before contracting with Charter, Simul–Vision's exclusive right to provide cable services to the apartment complex would have terminated and Simul–Vision would have controlled the disposition of its cable system. It follows then that, under the agreement, all Simul–Vision could reasonably expect from Seven Trails was the exclusive right to provide services to the complex for a month, and at most, the value of that right. This value constitutes the proper measure of damages because it would have put Simul–Vision in the position that it would have occupied if Seven Trails had performed as agreed by the parties.

We do not question John Guidry's testimony as to the value of the cable system at the apartment complex since he is the owner and as such, possessed an intimate knowledge of what the system was worth. See *In re Marriage of Sumner,* 777 S.W.2d 267, 274 (Mo.App. S.D.1989) (Holding that an experienced owner of a business is competent to testify to the value of that business in the absence of a showing that he in fact lacks knowledge of the value at issue or that his opinion is based on an improper standard). We do not want to uplift Simul–Vision to a financial stance higher than it would have occupied had Seven Trail's performed as promised.

The critical question then becomes, what was the value of Simul–Vision's cable system to a potential buyer given that the agreement, from which the system derived its viability, was terminable with only a thirty-day notice requirement?

Guidry presented evidence of the sale of other systems he had operated in the St. Louis area. Based on this evidence, the jury ostensibly awarded Simul–Vision $2,000 as the per-subscriber value Simul–Vision may have received from a potential buyer if Seven Trails had not breached the month-to-month agreement. We find that the jury's award is speculative, unsupported by the evidence and excessive as a matter of law. There is no evidence that, absent Seven Trails' breach, Simul–Vision would have been able to find a potential buyer willing to pay $2,000 per-subscriber for the cable system in question. In order to recover what a potential buyer would have paid for its system, Simul–Vision would have had to prove with reasonable certainty that it would have found a potential buyer and that the potential buyer would have paid a certain amount. See *City of St. Louis v. Riverside Waste Mgmt., L.L.C.*, 73 S.W.3d 794, 805 (Mo. App. E.D.2002). Given the fact that the cable system in question was seventeen years old and the agreement upon which it was being operated was terminable with a thirty-day notice, any suggestion, without more, that Simul–Vision would have found a potential buyer willing to pay $2,000 per subscriber is mere speculation. Guidry presented evidence that he had sold other systems in the St Louis area and impliedly, that he could have sold the system at the apartment complex. However, there is no evidence in the record that the other systems were so similarly situated as the system at the apartment complex in order to infer that Simul–Vision would have found a potential buyer willing to pay $2,000 per subscriber for the system in question.

Even if we were to find that Simul–Vision could have found a potential buyer, the evidence does not support the jury's award of $2,000 per-subscriber value. The record shows that John Guidry built and sold four other cable systems in St. Louis: 1) Lake St. Louis—$2,000 per-subscriber; 2) Wentzville—$1,975 per-subscriber; 3) Country Club Hills—$197 per-subscriber; and 4) Tempo Apartments—$10,000 for wiring. To the extent that the jury relied on John Guidry's testimony in arriving at the damage award, it failed to take into account the fact that the Lake St. Louis system, for which John Guidry received $2,000 per-subscriber, was being operated on a contract with 13 years remaining before expiration. Similarly, the Wentzville system, for which John Guidry received $1,975 per-subscriber, was also being operated on a contract with 13 years remaining before expiration. However, here, the only right that Simul–Vision had that it could have transferred to a potential buyer by sale was the right to provide cable services to the apartment complex for thirty days. As such, Simul–Vision's cable system at Seven Trails was more comparable to the one it sold at Country Club Hills for which John Guidry received $197 per subscriber in that they both had only one month remaining on the contract on which they were being operated. Therefore, the award of the price John Guidry received per-subscriber for a system with 13 years remaining on its contract, under the facts of this case, is excessive and would operate as a windfall to Simul–Vision if left uncorrected. The judgment is reversed and remanded for a new trial on damages.

Having found that the award is excessive, we need not address Seven Trails' fifth point on appeal as it relates mainly to

evidentiary rulings on the issue of damages.

### Tortious Interference

In its cross-appeal, Simul–Vision raises five points, arguing that the trial court erred when it granted Charter's motion for summary judgment. Our review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

Summary judgment is a drastic remedy, which borders on a denial of due process and effectively denies the party against whom it is entered a day in court. *Bellon Wrecking & Salvage, Co. v. Rohlfing*, 81 S.W.3d 703, 705 (Mo.App. E.D.2002). Therefore, this court will review the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all inferences which may reasonably be drawn from the record. *ITT*, 854 S.W.2d at 376.

■ The elements of a claim of tortious interference with contract are: (1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's conduct. *Howard v. Youngman*, 81 S.W.3d 101, 112–13 (Mo.App. E.D.2002). "A defending party may establish a right to summary judgment by showing facts that negate *any one* of the claimant's elements." *Davis v. Board of Educ. of City of St. Louis*, 963 S.W.2d 679, 691 (Mo.App. E.D.1998) (emphasis in original).

■ We will address the third point Simul–Vision raised on appeal first because we find it dispositive of Simul–Vision's cross-appeal. In its third point, Simul–Vision claims the trial court erred in granting Charter summary judgment because there was a genuine issue of material fact as to whether Charter induced or caused the breach of the agreement between Simul–Vision and Seven Trails. We disagree. We find that Charter was entitled to summary judgment because it had brought forth sufficient facts to negate one of the elements of Simul–Vision's claim. *ITT*, 854 S.W.2d at 381.

A reiteration of the facts necessary for disposition of Simul–Vision's cross-appeal is in order. The facts, viewed in a light most favorable to Simul–Vision, reveal that the parties had a month-to-month contract, of which Charter admitted knowledge on several occasions in writing. The undisputed evidence also showed: Seven Trails informed Simul–Vision that it was not interested in renewing the 1984 Contract for another five years; it requested that parties operate on a month-to-month basis and started shopping for another cable provider to replace Simul–Vision. Seven Trails invited Charter to bid on the right to provide cable service to the complex. Charter entered into negotiations and contracted with Seven Trails to provide cable services to the complex. Charter started installing necessary equipment at the Apartment Complex in July 2001, while Seven Trails and Simul–Vision continued with their month-to-month agreement. However, Charter did not start providing cable services to the apartment complex until after Seven Trails had formally terminated the month-to-month arrangement with Simul–Vision.

"A defendant induces a breach of contract if he actively and affirmatively takes

steps to induce the breach and the contract would have been performed absent interference from the defendant." *Howard v. Youngman,* 81 S.W.3d 101, 114 (Mo.App. E.D.2002). The undisputed facts establish that Seven Trails approached Charter about providing cable services to the Apartment Complex. Seven Trails invited Charter to bid on the right to provide its services to the residents of the Apartment Complex. The initial move to establish a relationship was made by Seven Trails after it had decided not to continue its relationship with Simul–Vision on a long-term basis. Although Charter paid Seven Trails $100,000 for the right to provide cable services to the Apartment Complex, the undisputed evidence show that this was a standard practice and the amount was negotiated after Seven Trails had invited Charter. We fail to see how Charter induced Seven Trails to breach where Charter was invited to bid. This negates the intentional interference element of Simul–Vision's claim and thus Charter was entitled to judgment as a matter of law. *Davis,* 963 S.W.2d at 691.

Finding that Simul–Vision cannot prove one of the elements of its tortious interference claim against Charter, we need not address Simul–Vision's remaining points. Charter was entitled to judgment as a matter of law and the trial court did not err in granting Charter summary judgment.

### Conclusion

We find that the trial court did not err in submitting the case to the jury because Simul–Vision presented a submissible case that the Exclusivity Provision in the 1984 Contract applied to the month-to-month agreement with Seven Trails. In addition, the trial court properly refused to submit Seven Trails' first to breach instruction. While Simul–Vision presented substantial evidence of damages and therefore made a submissible case for breach of contract, those damages were speculative and excessive. The case is hereby remanded to the trial court for a new trial on damages only.

We also find that the trial court did not err in granting summary judgment in favor of Charter.

LAWRENCE E. MOONEY, J., and BOOKER T. SHAW, J., concur.